**NEW IDEA FARM EQUIPMENT CORPORATION, Plaintiff–Appellant,**

v.

**SPERRY CORPORATION and New Holland, Inc., Defendants–Appellees.**

No. 87–1216.

United States Court of Appeals,
Federal Circuit.

Oct. 12, 1990.

**1562**

Raymond M. Mehler, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., argued, for plaintiff-appellant. With him on the brief were Daniel R. Pastirik, David Lesht and John L. Alex.

Berton Scott Sheppard, Leydig, Voit & Mayer, Chicago, Ill., argued, for defendants-appellees. With him on the brief was John B. Conklin, Leydig, Voit & Mayer of Chicago. Frank J. Daily and Michael L. Zaleski, Quarles & Brady, of Madison, Wis., of counsel.

Before MARKEY * and LOURIE, Circuit Judges, and BROWN,** District Judge.

LOURIE, Circuit Judge.

New Idea Farm Equipment Corporation (New Idea) appeals from a judgment entered by the United States District Court for the Northern District of Illinois, No. 84–C–10665, January 28, 1987, holding Sperry Corporation and New Holland, Inc. (collectively, Sperry) not liable for infringement of U.S. Patents 3,868,811 ('811) and 4,018,036 ('036), owned by New Idea. The case was tried to a jury, which returned a special verdict under Rule 49(a), Fed.R. Civ.P., on which a judgment of invalidity under 35 U.S.C. § 102(a) and 102(g) was based. We affirm.

---

* Circuit Judge Markey vacated the position of Chief Judge on June 27, 1990.

** Judge Garrett E. Brown, Jr. of the United States District Court for the District of New Jersey, sitting by designation.

1. Harvesters are farm machinery for cutting forage crops—green hay and grass-type crops used primarily as animal feed. A mower condi-

# I

## BACKGROUND

### A. Development of the Inventions and the Prior Art

New Idea and Sperry manufacture and sell harvesters, windrowers and mower conditioners for the farm industry.[1] In the late 1960's and early 1970's, International Harvester (IH) and Hesston Corporation (Hesston), both farm equipment manufacturers, were active in developing a tractor-drawn mower conditioner that would operate "outboard" of the tractor to avoid the tractor's running over the crop. In developing this harvester, the companies also wanted to have a machine that would have flexibility of movement and efficient cutting patterns, similar to self-propelled harvesters but less expensive.

In 1968 and 1969, Hesston performed a study to begin developing a tractor-drawn harvester which utilized a tongue arched over the header to pull the harvester. Merle Burkhart, Hesston's engineer who continued the study, envisioned an arched tongue attached to the frame of the harvester in several locations, including the center. It was not until the fall of 1972 that Hesston, under the direction of Burkhart, finally built and operated a harvester utilizing an arched tongue attached to the center of the harvester frame that embodied the inventions claimed in the patents in suit. During this development period, on October 21, 1971, Burkhart filed an application for a patent on a pull-type hydraulically-powered forage harvester having a tongue arched over the header and pivoted on the rear frame, adjacent to one side (referred to by the parties as a "side-pivot" harvester). This machine is illustrated by Figs. 1 and 2 of U.S. Patent 3,832,837 ('837), reproduced below.

tioner is a particular type of harvester that cuts or mows a crop and conditions it in some way before laying it on the ground as a flat ribbon. A windrower is a mower conditioner that gathers the cut crop into a row that is narrower than the swath, the width of the cut made by the harvester.

Fig. 1

U. S. PATENT 3,832,837
(BURKHART)

Fig. 2

A prototype of this machine was being field tested by Hesston near Phoenix, Arizona, on May 8, 1972. George Cicci and Guy Tufts, employees of IH, saw and inspected the machine and its operation during the field test and conceived the idea of putting the arched tongue in the middle of the harvester so that the harvester could be operated fully outboard on both sides of the tractor. On that spring day in Arizona, Cicci and Tufts made a sketch of their invention. Application for a patent on the invention was eventually filed on April 20, 1973, from which two patents issued

(the '811 and '036 patents).[2] These patents were later purchased from IH by a predecessor of New Idea.

The Cicci '811 patent covers a harvester which utilizes an arched tongue, *i.e.*, an elongated beam, attached on both ends pivotally to hitch the harvester to the tractor, so that the harvester can be moved to operate on either side of the tractor. The '036 patent covers a method of harvesting adjacent rows of standing crops by using the harvester. This harvester and its operation are illustrated in Figs. 1 and 2 of the '811 patent, reproduced below.

2. Neither the jury nor the district court made any distinction between these patents, one of which claims the apparatus and the other the method. The briefs make no such distinction.

We assume the parties have treated the patents similarly because the operative facts apply to both of them. In any event, we will also not treat them separately.

FIG. 2

FIG. 1

The '811 patent contains seven claims; claim 1 is the broadest:

1. A crop harvester adapted to be pulled by a tractor having wheels on either side comprising:

a frame;

a pair of ground wheels supporting said frame;

harvesting apparatus forwardly mounted on said frame and adapted to receive and harvest crops;

an arched hitching tongue having one end pivotally mounted to said frame about an axis located proximate to the transverse center of said frame, a distal end adapted for pivotal connection to a tractor hitch, and an intermediate portion capable of passing over said harvesting

apparatus, said harvesting apparatus remaining in a forward orientation, said tongue being of sufficient length to permit said harvester to be operated with said harvesting apparatus outboard of said tractor wheels on either side thereof and substantially perpendicular to the path of travel; and

control means connecting said frame to said tongue to determine the relative angular position thereof to selectively permit placement of said harvester on either side of said tractor.

The fundamental difference between the structure disclosed in the Burkhart '837 patent and that claimed in Cicci's '811 patent is the location of the pivot attachment to the frame of the harvester. As indicated above, Cicci's '036 patent is directed to the method of operating the harvester fully outboard of either side of the tractor.

B. *District Court Proceedings*

On December 13, 1984, New Idea sued Sperry, alleging infringement of the '811 and '036 patents. Sperry defended on grounds of patent invalidity under 35 U.S.C. § 102(a) and (g).[3] At the close of this portion of the trial, the jury deliberated and returned a verdict in the form of answers to six special verdict interrogatories on anticipation:

1. Do you find that Hesston was first to conceive the invention?

ANSWER: Yes.

2. Do you find that Hesston reduced the invention to practice prior to April 20, 1973?

ANSWER: Yes.

3. Do you find that Hesston's arched tongue, center-pivot machine was known to anyone besides Hesston employees prior to April 20, 1973?

ANSWER: Yes.

4. Do you find that Hesston's arched tongue, center-pivot machine was used by anyone besides Hesston employees prior to April 20, 1973?

ANSWER: Yes.

5. Do you find that Hesston did not abandon the invention after it reduced the invention to practice?

ANSWER: Yes.

6. Do you find that International Harvester did not use reasonable diligence in filing its patent application with the United States Patent Office?

ANSWER: No.

Based on the jury's answers, the judge concluded that all of the claims of the '811 and '036 patents were invalid as anticipated under Sections 102(a) and 102(g), and entered judgment accordingly. New Idea's post-trial motions for JNOV and new trial were denied.

II

DISCUSSION

 The issue before us is whether the district court erred in denying New Idea's motions for JNOV and new trial. When considering a motion for JNOV a district court must consider all the evidence, drawing all reasonable inferences in a light most favorable to the nonmoving party, without determining credibility or substituting its choice for that of the jury in deciding between conflicting evidence. The moving party is entitled to a JNOV only when the district court is convinced on the record before the jury that reasonable persons could not have reached a verdict for the nonmoving party. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1513, 220 USPQ 929, 936 (Fed.Cir.), *cert. denied*, 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). As an alternative to JNOV, a court in its discretion may grant a motion for a new trial if prejudicial error occurred, or if the verdict is against the weight of the evidence. *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 626, 225 USPQ 634, 643 (Fed. Cir.1985).

To achieve reversal of the district court's denial of the motion for JNOV, New Idea

---

3. The issue of obviousness under 35 U.S.C. § 103 was reserved for the next phase of the 916 F.2d—35

trial, which was never reached.

must convince this court that the jury's findings are not supported by substantial evidence, or that those findings cannot support the legal conclusions drawn by the jury or the judge. *See Senmed, Inc. v. Richard–Allan Medical Indus.*, 888 F.2d 815, 817, 12 USPQ2d 1508, 1510 (Fed.Cir. 1989). The district court's denial of the motion for a new trial will be reversed only if the trial judge abused his discretion. *Shatterproof Glass Corp.*, 758 F.2d at 626, 225 USPQ at 643.

## A. Section 102(g)

■ Section 102(g) provides that a person is entitled to a patent unless "before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it." New Idea argued in its motion for a directed verdict and in its motion for JNOV that the prior invention of another cannot be used to invalidate a patent in an infringement action.

While more commonly applied to interferences, section 102(g) is indeed applicable to prior invention situations other than in the context of an interference. *See E.I. Du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 7 USPQ2d 1129 (Fed.Cir.), *cert. denied*, 488 U.S. 986, 109 S.Ct. 542, 102 L.Ed.2d 572 (1988). Thus, the dates of Burkhart's conception and reduction to practice are relevant in determining whether his inventive activity was prior to and therefore invalidates Cicci's patent under section 102(g). The jury, in special verdict one, found that Hesston, *i.e.*, Burkhart[4], was first to conceive the invention claimed by Cicci. New Idea challenges Burkhart's conception by arguing that special verdict one is not supported by substantial evidence and that the testimony of Burkhart was not corroborated. The record shows that Hesston performed a study in 1968 and 1969 concerning the arched tongue feature of the invention. Burkhart testified that during the study Hesston engineers began working on an arched tongue pull-type harvester designed with a center pivot. This testimony was supported by sketches of design concepts made during the study. Burkhart also testified that in late 1970, he built a mock-up of an arched tongue harvester with the tongue attached to the center of the harvester. A drawing by a Hesston draftsman of an arched tongue assembly, dated January 28, 1971, also indicates that the tongue would be attached to the center of the harvester. Burkhart's testimony further showed that in early 1971, a prototype harvester was built with an arched tongue and a center pivot connection to the harvester. The various sketches and drawings made by people other than Burkhart provide adequate corroboration of Burkhart's testimony. This activity was further corroborated by Hesston's meeting minutes of July 14, 1971, concerning the side-pivot arched tongue harvester. The minutes state: "put the pivot in the center and cut back and forth." Substantial evidence thus supports the jury's conclusion that Burkhart conceived a center pivot version of its prototype, and knew of its advantages, before Cicci and Tufts inspected the Hesston side-pivot prototype in the spring of 1972 and conceived the patented center pivot invention.

The jury found, and New Idea concedes, that Hesston was first to reduce the center pivot invention to practice, *i.e.*, that Hesston reduced the invention to practice before Cicci's filing date.[5] This reduction to practice occurred in August 1972 on the Burkhart farm. The Hesston prototype center-pivot machine was then shipped to a farmer near Turon, Kansas, where it was publicly used on several farms.

It is well established that, in a priority contest, the party first to conceive and first

---

4. Although the special verdict referred only to Hesston, the judge properly recognized that people conceive, not companies, stating that "[w]hen I refer to Hesston, I mean to include Mr. Burkhart and all his colleagues who worked on the Hesston machines in question." *J. App.* 3542.

5. Cicci can only rely on his filing date for reduction to practice as he does not allege an actual reduction to practice.

to reduce to practice prevails. *See generally* 3 D. Chisum, *Patents* § 10.03[1] at 10–20 (1990). Since Burkhart was first on both counts, it necessarily follows that, in the context of section 102(g), "before the invention thereof [by Cicci] the invention was made in this country by another [Burkhart] who had not abandoned, suppressed, or concealed it."[6] Therefore, we affirm the district court's judgment of invalidity under 35 U.S.C. § 102(g).[7]

## B. *Other Issues*

■■■ Two additional issues were raised that merit addressing. First, New Idea contends that even if this court does not reverse the judgment below and grant its JNOV, the judgment should be vacated and a new trial granted because the judge improperly instructed the jury, over New Idea's objection, on the issue of conception. Specifically, New Idea contends, as it did at trial, that the court failed to tell the jury that the inventor's testimony on conception must be corroborated.

A new trial on the ground of erroneous instructions is permissible only when it is clear that an error in instructions as a whole was such as to have misled the jury. *Railroad Dynamics, Inc. v. A. Stucki Co.*, 727 F.2d 1506, 1518, 220 USPQ 929, 939 (Fed.Cir.1984). We review this denial of New Idea's motion for a new trial under an abuse of discretion standard. *Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1581, 1 USPQ2d 1081, 1092 (Fed. Cir.1986). The portion of the court's instructions to the jury which relate to conception are as follows:

> You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them....
>
> In determining the credit to be given to the testimony of a witness, you may take into account ... the reasonableness of

his testimony considered in the light of all the evidence in the case....

> The term conception or conceive refer to the mental part of making an invention, the time at which the inventor first pictures the complete invention in his mind....
>
> Clear and convincing evidence means evidence which produces in your mind a firm belief or conviction as to the matter sought to be established....
>
> The first question is: "Do you find that Hesston was the first to conceive the invention."
>
> Now let me translate that question.... Translated, what that means is: Do you find by clear and convincing evidence that Hesston was the first to conceive the invention.

J. App. 3540–3544.

Although these instructions do not explicitly require that the inventor's testimony on conception must be corroborated, they do instruct the jury to consider testimony or other pieces of evidence in light of all the evidence and to seek clear and convincing evidence of conception. In view of these instructions as a whole, and the evidence of record, we do not believe that the jury was confused on the issue of corroboration.

■■■ Second, the trial judge, in his November 1989 Supplemental Judgment Order, awarded Sperry one-half its attorney fees, based on Fed.R.Civ.P. 11 and 37(c), because New Idea wrongfully refused to admit certain facts during discovery. The judge further stated in that order:

> Should the Court of Appeals agree with the defendants that they were not required to prove that Burkhart was the first to conceive the invention then, of course, 100 percent of the reasonable cost of proving the "Hesston facts" should be awarded.

---

**6.** As special verdicts 2–5 are not in dispute, the question of whether Hesston (Burkhart) abandoned, suppressed, or concealed the invention is not at issue.

**7.** Because we affirm the district court judgment based on 35 U.S.C. § 102(g), we need not address the issues relating to 35 U.S.C. § 102(a). Moreover, Cicci's allegation of diligence is irrelevant because he was not the first to conceive the invention.

**1568**

*New Idea Farm Equipment Corp. v. Sperry Corp.*, No. 84–C–10665, slip op. at 4, 1989 WL 152288 (N.D.Ill. November 6, 1989).

Sperry now contends that it was not necessary to prove Burkhart's conception, which New Idea should have admitted during discovery; Sperry therefore claims that it is entitled to the other half of its attorney fees. We disagree. An award of attorney fees under Rules 11 or 37 is subject to our review under an abuse of discretion standard. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 751 (1976). No such abuse was shown. Moreover, the outcome of the case could not have been nearly as clear at trial as hindsight might now indicate. Finally, proof of Burkhart's conception was relevant and necessary for Sperry to prevail. We see no abuse of the trial judge's discretion in not awarding the other half of the attorney fees to Sperry.

We have considered all the other points raised by New Idea, but find no reversible error.

### III

### CONCLUSION

As indicated by its denial of New Idea's post-trial motions, the district court was not convinced by the record before the jury that a reasonable person could not have reached a verdict for Sperry or that the jury was misled. We are equally unpersuaded. New Idea has not convinced us that the jury's findings are not supported by substantial evidence, that those findings cannot support the legal conclusions drawn by the jury or the judge, or that the judge abused his discretion in denying New Idea's motion for a new trial or for JNOV. Therefore, the judgment is *affirmed*.

AFFIRMED.