**THOMSON, S.A., Plaintiff–Appellant,**

v.

**QUIXOTE CORPORATION and Disc Manufacturing, Inc., Defendants–Appellees.**

No. 97–1485.

United States Court of Appeals, Federal Circuit.

Jan. 25, 1999.

George E. Badenoch, Kenyon & Kenyon, of New York City, argued for plaintiff-appellant. With him on the brief were Richard L. Mayer, John Flock, and Robert F. Perry.

Thomas L. Giannetti, Fish & Neave, of New York City, argued for defendants-appellees. With him on the brief were Harold V. Johnson, and James B. Blanchard, Brinks, Hofer, Gilson & Lione, of Chicago, Illinois.

Before RICH, SCHALL, and GAJARSA, Circuit Judges.

RICH, Circuit Judge.

Thomson, S.A. ("Thomson") appeals from the June 24, 1997 order of the United States District Court for the District of Delaware in an action for patent infringement. *See Thomson, S.A. v. Quixote Corp.*, 979 F.Supp. 286 (D.Del.1997) (*"Thomson I"*). The court denied Thomson's motion for Judgment as a Matter of Law or in the alternative for a new trial, and sustained the jury verdict that U.S. Patent Nos. 4,868,808, 5,182,743, 4,961,183, and 5,175,725 are invalid for lack of novelty under 35 U.S.C. § 102(g). We affirm.

### BACKGROUND

Plaintiff–Appellant Thomson is the assignee of the patents in suit, which are directed to optical information-storage devices, such as compact discs ("CDs"). Thomson makes and markets machines that "read" or "play" CDs, and grants licenses under the patents in suit to companies which produce CDs. Defendants–Appellees, Quixote Corp. and Disc Manufacturing, Inc. (collectively, "Quixote") make CDs.[1]

Thomson sued Quixote for patent infringement. The parties agreed to base the outcome of the trial on three representative claims: claims 1 and 13 of U.S. Patent No. 4,868,808, and claim 1 of U.S. Patent No. 5,182,743. Before the full trial, the district

---

1. Quixote Corp. is a holding company that until recently owned Disc Manufacturing Inc., a con- tract maker of video and audio CDs.

court conducted a *Markman* hearing and issued a written opinion construing the representative claims.

At trial, the parties stipulated that Thomson's invention date for the patents in suit is August 25, 1972. Quixote's defense included evidence purporting to show that the representative claims are anticipated by an unpatented laser videodisc developed before August 1972 by a non-party, MCA Discovision, Inc. ("MCA"). After trial, the jury found in special verdicts that all of the representative claims were literally infringed, but that those claims are invalid due to lack of novelty (*i.e.*, anticipated) under 35 U.S.C. § 102(g).

Thomson submitted a motion requesting that the district court either set aside the jury's verdict of invalidity and enter Judgment as a Matter of Law ("JMOL") holding the patents not invalid, or grant a new trial on the lack of novelty issue. Thomson argued that JMOL was proper because there was insufficient evidence in the record to support the jury's anticipation verdict concerning certain claim limitations the court had held to be present following the *Markman* hearing.

In its opinion denying Thomson's motion, the district court described evidence in the record supporting the jury's finding of anticipation for each of the limitations that Thomson asserted had not been proven to be present in the MCA videodisc. *See Thomson I*, 979 F.Supp. at 292–98. The court noted that the evidence supporting the anticipation finding came from one or more sources: the live testimony of two people who had worked on the MCA laser videodisc project; an expert's report and portions of his deposition testimony, both of which were read into the record; the expert's exhibits; and certain MCA documents that the expert had reviewed. *Id.* at 288, 292–98. The court concluded that substantial evidence supports the jury's finding that Quixote had shown, by clear and convincing evidence, that every limitation in the representative claims was anticipated by the MCA device. *Id.* at 295, 298.

Thomson appeals the district court's denial of its motion for JMOL.

*ANALYSIS*

■ JMOL is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1353, 47 U.S.P.Q.2d 1705, 1713 (Fed.Cir.1998) (quoting Fed.R.Civ.P. 50(a)(1)). We review a denial of a motion for JMOL *de novo* by reapplying the JMOL standard. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 975, 34 U.S.P.Q.2d 1321, 1326 (Fed.Cir.1995) (in banc). Under this standard, we can reverse a denial of a motion for JMOL only if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings. *See Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454, 46 U.S.P.Q.2d 1169, 1172 (Fed.Cir.1998) (in banc).

Thomson's first argument on appeal is that, in its memorandum opinion denying Thomson's JMOL motion, the district court essentially ignored specific claim limitations that the court had identified following the *Markman* hearing.[2] This argument is particularly unpersuasive given the format of the district court's opinion, in which the court began its analysis of each disputed limitation by reviewing the construction of the limitation it had made in the Markman hearing.

■ Thomson's core argument in support of reversing the district court's denial of its motion for JMOL is based on its assertions that (1) the jury verdict rests upon mere testimonial evidence by the two non-party MCA employees who worked on the videodisc project, and (2) this evidence is insufficient as a matter of law to support a holding of invalidity under subsection 102(g), *because such testimonial evidence by inventors of their prior invention requires corroboration.* Even if we accept Thomson's first assertion, and further assume that the MCA employ-

2. Thomson does not directly attack the district court's claim construction, so claim construction

is not an issue before us.

ees were acting as inventors in the laser videodisc project, Thomson's argument fails because this case does not present circumstances in which there is a need for corroboration, as hereinafter explained.

We begin with the language of 35 U.S.C. § 102(g):

A person shall be entitled to a patent unless—

. . . .

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed, or concealed it. In determining priority of invention there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to practice, from a time prior to conception by the other.

■ We have interpreted the first sentence of subsection 102(g) to permit qualifying art to invalidate a patent claim even if the same art may not qualify as prior art under other subsections of § 102. *See, e.g., Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n,* 54 F.3d 756, 761, 35 U.S.P.Q.2d 1042, 1046 (Fed.Cir.1995); *Am-*

gen, Inc. v. Chugai Pharm. Co., 927 F.2d 1200, 1205, 18 U.S.P.Q.2d 1016, 1020 (Fed. Cir.1991).[3] Art is not qualified under subsection 102(g) unless, viewed under a rule of reason, the totality of the evidence that the art satisfies the requirements of subsection 102(g) is clear and convincing. *See Price v. Symsek,* 988 F.2d 1187, 1194–95, 26 U.S.P.Q.2d 1031, 1036–37 (Fed.Cir.1993). We have also often held, in both interference and infringement lawsuits, that an inventor's testimony alone respecting the facts surrounding a claim of derivation or priority of invention cannot satisfy the clear and convincing standard without corroboration. *See, e.g., Cooper v. Goldfarb,* 154 F.3d 1321, 1330, 47 U.S.P.Q.2d 1896, 1903 (Fed.Cir.1998) (interference); *Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371, 47 U.S.P.Q.2d 1363, 1366 (Fed.Cir.1998) (infringement).[4] Although courts have reviewed infringement suits in which the defendant had attempted to prove subsection 102(g)-type anticipation by a non-party inventor at trial, *see, e.g., Eibel Process Co. v. Minnesota & Ontario Paper Co.,* 261 U.S. 45, 43 S.Ct. 322, 67 L.Ed. 523 (1923); *Washburn & Moen v. Beat'Em All Barbed–Wire,* 143 U.S. 275, 12 S.Ct. 443, 36 L.Ed. 154 (1892);

---

**3.** The interpretation of subsection 102(g) to provide a prior art basis for invalidating a patent claim in infringement litigation was not intended by the drafters of the 1952 Patent Act. As the second sentence in the subsection indicates, 102(g) was written merely to provide a statutory basis for determining priority of invention in the context of interference proceedings before what was then the United States Patent Office. *See* P.J. Federico, *Commentary on the New Patent Act* at 19, in 35 U.S.C.A. (1954 ed., discontinued in subsequent volumes) (reprinted in 75 J. Pat. Trademark Off. Soc'y 161, 180 (1993)). Nevertheless, the first sentence is clear and, as the cases show, has been taken to have independent significance as a basis for prior art outside of the interference context.

This result makes sense. The first to invent who has invested time and labor in making and using the invention—but who might have opted not to apply for a patent—will not be liable for infringing another's patent on that same invention, while the public will have benefited because the invention was not abandoned, suppressed or concealed. However, in view of these and other related policy concerns, and amendment of the statute, we have made clear that art qualifying only under subsection 102(g) may not be used

under § 103 to invalidate other patents of fellow employees engaged in team research. *See Oddzon Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1402–03, 43 U.S.P.Q.2d 1641, 1644–45 (Fed.Cir. 1997) (discussing *Application of Bass,* 59 C.C.P.A. 1342, 474 F.2d 1276, 1290, 177 U.S.P.Q. 178, 189 (1973) and the 1984 amendments to § 103).

**4.** Thomson incorrectly argues that we extended the corroboration rule to include non-inventors in *Woodland Trust.* In *Woodland Trust,* the infringement defendant argued that the patent claims at issue were invalid under 35 U.S.C. § 102(a), testifying that the claims had been anticipated by his prior invention and public use. Thus, the corroboration rule was properly applied to the testimony of the defendant because he was a *party* who claimed to be an *inventor. See Woodland Trust,* 148 F.3d at 1369–70, 47 U.S.P.Q.2d at 1365 (holding that evidence did not meet clear and convincing standard required to show anticipation, despite corroborating testimony of four witnesses, where the witnesses were related to defendant by blood or long friendship, and no corroborating physical evidence was submitted despite defendant's assertion that he had used the invention for more than ten years).

*New Idea Farm Equip. Corp. v. Sperry Corp.*, 916 F.2d 1561, 16 U.S.P.Q.2d 1424 (Fed.Cir.1990), neither the Supreme Court nor we have directly held whether the corroboration rule must be applied to testimony by non-party inventors that is directed to establishing their invention as anticipating the claims at issue.[5]

The cases that discuss skepticism of uncorroborated inventor testimony directed to establishing priority over an opponent's patent claim involve situations where the inventor is self-interested in the outcome of the trial and is thereby tempted to "remember" facts favorable to his or her case. *See, e.g., Barbed–Wire*, 143 U.S. at 284–85, 12 S.Ct. 443 (indicating that testifying non-party inventors' patents would increase in value if patent claims at issue were invalidated); *Price v. Symsek*, 988 F.2d at 1194, 26 U.S.P.Q.2d at 1036 (showing that testifying inventor's interfering patent claims would be invalidated if he could not establish priority; and holding that board extended corroboration rule beyond reasonable bounds).

The clear and convincing standard of proof required to establish priority, along with the numerous methods in the Federal Rules of Civil Procedure and Evidence by which a party may test, challenge, impeach, and rebut oral testimony, normally protects patentees from erroneous findings of invalidity. *See Price v. Symsek*, 988 F.2d at 1192–94, 26 U.S.P.Q.2d at 1035–36 (discussing standards of proof and requiring interference junior party to establish priority by clear and convincing evidence). Thus, the corroboration rule is needed only to counterbalance the self-interest of a testifying inventor against the patentee. We therefore hold that corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue.

In the current case, the purported inventors who testified were non-parties and their testimony concerned an unpatented prior invention. Although Thomson argues that the corroboration rule is justified here because both testifying witnesses were involved in businesses that supplied goods and services to Quixote, this does not rise to the level of self-interest required to justify triggering application of the corroboration rule. In fact, Thomson's only reference to the record showing this potential source of bias is a transcript of Thomson's cross examination of one of the witnesses, which means that the jury had the necessary facts to assess the credibility of the witnesses.

We therefore conclude that the district court was correct in holding that substantial evidence supports the jury's finding that Quixote showed, by clear and convincing evidence, that every limitation in the representative claims was anticipated, and that the district court was correct in denying Thomson's motion for JMOL.

Finally, because we hold that the testimony of the presumed MCA inventors did not have to be corroborated, we do not reach Thomson's argument that Quixote's expert's claim charts and expert report are entitled to no weight.

### CONCLUSION

In view of the foregoing, we affirm the district court's decision to sustain the jury verdict and deny Thomson's motion for JMOL.

*AFFIRMED.*

---

**5.** This includes *In re Reuter*, 670 F.2d 1015, 210 U.S.P.Q. 249 (CCPA 1981). In *Reuter*, the CCPA affirmed the Patent and Trademark Office's reissue proceeding finding that claims were unpatentable under 35 U.S.C. § 103. The *Reuter* court held that an expert's affidavit, in addition to deposition testimony of one of the patent's named inventors, showed a motivation to combine the cited prior art references. Thus, the court's statement that no weight should be given to an uncorroborated portion of the expert's affidavit in which the expert asserted that he had invented an anticipating device, *see Reuter*, 670 F.2d at 1022, 210 U.S.P.Q. at 256, was dictum and therefore not controlling precedent.