3M UNITEK CORPORATION, 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company, Plaintiffs and Counter–Defendants,

v.

ORMCO COMPANY, Defendant and Counter–Plaintiff.

And Related Counterclaim

No. 99–10099–RAP(EX).

United States District Court, C.D. California.

Feb. 24, 2000.

William A. Streff, Kevin H. Rhodes, Bruce O. Bradford and Marc H. Cohen of Kirkland & Ellis, Chicago, IL, for plaintiffs.

J. Robert Chambers, Donald F. Frei and Theodore R. Remaklus of Wood, Herron & Evans, L.L.P., Cincinnati, OH, for defendants.

## ORDER GRANTING PRELIMINARY INJUNCTION

PAEZ, District JUDGE.

### I.

### Introduction

Plaintiffs 3M Unitek Corporation, 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively "3M Unitek") are seeking a preliminary injunction to prevent defendant from continuing to sell its "inspire!" ceramic orthodontic brackets for use in orthodontic braces. Plaintiffs argue that the defendant's bracket infringes on plaintiffs' patents, United States Patents 5,366,372 ("372 patent") and 5,439,379 ("379 patent"). Because the Court finds that plaintiffs have demonstrated that they

are likely to succeed on the merits, that they will suffer irreparable harm if the Court does not grant the preliminary injunction, and that the balance of hardships tips in their favor, the Court concludes that plaintiffs' motion should be granted.

## II.

## Discussion

### A. Factual Background

Both of the parties, 3M Unitek and Ormco Corporation are major suppliers of orthodontic products. The plaintiffs introduced their patented ceramic bracket, "Clarity," three years ago. The product is now the best selling ceramic bracket in the market. (Pl's Mot. at 1.) In September of 1999, the defendant began shipping its "inspire!" brackets. Defendant has marketed inspire! brackets as a direct alternative to the Clarity[1] bracket. Defendant does not dispute that inspire! infringes on the patents held by 3M Unitek for the Clarity bracket. The plaintiffs hold two patents in connection with the Clarity bracket: United States Patent Nos. 5,366,372 ("372 Patent") and 5,439,379 ("379 Patent"). The 372 patent is entitled "Method and apparatus for debonding ceramic orthodontic brackets." The 379 patent is entitled "Ceramic orthodontic bracket with debonding channel."

Ceramic brackets are clear in color and thus are often preferred by patients to the traditional metal brackets. Despite their aesthetic attributes, there were initial problems with the predecessors to the Clarity and inspire! brackets. When first introduced, orthodontists who attempted to use ceramic brackets often had difficulty debonding the bracket from the patient's teeth.

According to the plaintiffs there was a long felt need for a ceramic bracket that could be debonded quickly and cleanly. (Pl's Mot. at 4.) Because of the difficulty in debonding the ceramic brackets from the

patient's teeth, the sale of ceramic brackets suffered. The sale of ceramic brackets declined for eight years in a row prior to the introduction of plaintiffs' Clarity bracket. (Pl's Mot. at 4, Lane Decl. at ¶¶ 7, 14 & Exh. 3A; Sorenson Decl. at ¶ 10.)

Plaintiffs submitted evidence that they worked for five years developing the "next generation" of ceramic brackets, spending enormous resources on research and development. (Pl's Mot. at 4; Lane Decl. at ¶ 8; Hanson Decl. at ¶ 8.) Plaintiffs claim that this effort resulted in the patents in suit and introduction of the Clarity bracket.

Clarity has been a success since its introduction to the market three years ago. The plaintiffs produced evidence that the Clarity bracket has become its "flagship" product. (Pl's Mot. at 5; Lane Decl. ¶ 11.) Currently, they are the most widely used ceramic orthodontic bracket in the world. (Pl's Mot. at 4; Lane Decl. at ¶ 12.) Sales were expected to total over 9 million in 1999. (Pl's Mot. at 5; Lane Decl. at ¶ 11.)

Since the Clarity bracket's introduction, market sales of ceramic brackets have nearly doubled. Other types of "aesthetic," i.e. clear colored brackets, such as plastic brackets, have declined accordingly.

The 372 and 379 patents essentially relate to the bracket's "debonding channel," the "frangible web" and the methodology of removing the bracket. The orthodontist uses a pliers type instrument to squeeze the sides of the bracket together. The channel facilitates debonding because the rocking motion used to debond concentrates the debonding stresses along the outer edges of the bracket which reduces the likelihood of damage to the enamel of the tooth.

Defendant claims that the patents obtained by plaintiffs are invalid. That both the bracket itself and the debonding procedure are not novel. According to defen-

---

**1.** It is clear that the defendant has positioned its inspire! product as a direct competitor of the Clarity bracket. Defendant issued an advertisement featuring the products side by side noting that its product is the "clearly superior choice." (Pl's Mot. at 9.)

dant, a company that it recently purchased was manufacturing and distributing a bracket under the name "Starfire" since 1987 that is identical to claims 1, 2, and 6 of the 379 patent. (Def's Opp. at 2; Iserman Decl. at ¶ 3; Spartin Decl. at ¶¶ 3,5; Swartz Decl. at ¶¶ 5–16; Ruiz–Vela Decl. at ¶¶ 5–15; Farzin–Nia Decl. at ¶¶ 7–17.) Moreover, defendant states that orthodontists in the Midwest were routinely and openly practicing the debonding method in claims 1, 2, and 4 of the 372 patent. (Def's Opp. at 2; Moles Decl. at ¶¶ 8–16; Lippitz Decl. at ¶¶ 5–7; Cecchini Decl. at ¶¶ 3–7; Cassity Decl. at ¶¶ 2–7.)

## B. Preliminary Injunction Standard

Congress has specifically authorized district courts to grant injunctive relief in accordance with the principles of equity to prevent patent infringement:

> courts ... may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable.

35 U.S.C. § 283.

The law of the Federal Circuit, rather than the Ninth Circuit, governs the issuance of a preliminary injunction in a patent case. *Hybritech Inc. v. Abbott Laboratories*, 849 F.2d 1446, 1450, n. 12 (Fed.Cir. 1988). The Federal Circuit has established a four part test to determine whether a preliminary injunction should be granted:

(1) the probability of success on the merits; (2) the threat of irreparable harm to the movant should a preliminary injunction be denied; (3) the balance between this harm and the harm that granting the injunction will cause to the other parties; and (4) the public interest.

**2.** Defendant does not concede that it is infringing plaintiffs' patents. However, it only argues that there can be no liability for infringement of invalid claims. (Def's Opp. at 21.) Even though defendant does not contest infringement, the Court independently evaluated plaintiffs' literal infringement analysis as reflected in its charts comparing the inspire!

*Nutrition 21 v. United States*, 930 F.2d 867, 868 (Fed.Cir.1991) *citing Pretty Punch Shoppettes v. Hauk*, 844 F.2d 782, 783 (Fed.Cir.1988). No one element is dispositive. The district court "must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Hybritech, Inc.*, 849 F.2d at 1451. While, no one factor is itself dispositive, "the absence of an adequate showing with regard to any one factor may be sufficient given the weight or lack of it assigned the other factors, to justify denial of the injunction." *Calmar, Inc. v. Emson Research, Inc.*, 838 F.Supp. 453, 455 (C.D.Cal.1993). The grant or denial of a preliminary injunction is within the discretion of the district court. *Atari Games Corp. v. Nintendo of America, Inc.*, 897 F.2d 1572, 1575 (Fed. Cir.1990).

### 1. *Likelihood of Success on the Merits*

In order to succeed on the merits, plaintiffs must prove that the 379 and 372 patents are both valid and infringed by defendant's product. *Bio–Technology Gen. Corp. v. Genentech, Inc.*, 80 F.3d 1553, 1558 (Fed.Cir.1996). As defendant does not contest infringement, the only issue the Court must resolve under the first prong of the analysis is the validity of the patents.[2]

At the preliminary injunction stage "because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21*, 930 F.2d at 869.

#### a. Determining Validity

Federal statutory law states that a patent, once issued, is presumed valid. 35

Bracket with the elements of claims 1, 2, and 6 of the 379 patent and claims 1, 2, and 4 of the 372 patent. (See Mah Decl. At 14–25). The Court agrees that plaintiffs are likely to prevail on their claim of infringement with respect to claims 1, 2, and 6 of the 379 patent and claims 1, 2, and 4 of the 372 patent.

U.S.C. § 282. Recently, the Federal Circuit held that "a patent is presumed valid ... at every stage of the litigation." *Canon Computer Systems, Inc. v. Nu–Kote International, Inc.*, 134 F.3d 1085, 1088 (Fed.Cir.1998). If, however, "a party opposing a request for a preliminary injunction raises a 'substantial question' concerning the validity of a patent, in order to prevail, the party seeking the injunction must respond by establishing that the defense lacks 'substantial merit.' " *New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed.Cir. 1992). Therefore, the plaintiffs are not able to simply rest on the presumption of validity. If the defendant is unable to "identify any persuasive evidence of invalidity, the very existence of the patent satisfies the patentee's burden on the validity issue." *Canon Computer Systems, Inc.*, 134 F.3d at 1088. If, however, defendant is able to offer persuasive evidence, the Court must find that defendant has raised a substantial question as to the validity of the patent and deny the preliminary injunction. In a case where the defendant challenges the validity of a patent, and presents evidence that the patent is in fact invalid, the plaintiff must then show that the "defense lacks substantial merit." *Calmar, Inc.*, 838 F.Supp. at 457.

A patent is invalid if it is anticipated by prior art. *Continental Can Co. USA, Inc. v. Monsanto Co.*, 948 F.2d 1264 (Fed.Cir. 1991). Anticipation is a factual issue. *Glaxo, Inc. v. Novopharm, Ltd.*, 52 F.3d 1043, 1047 (Fed.Cir.1995). Whether a patented invention is "new" or "anticipated" is tested in accordance with 35 U.S.C. § 102, which provides, in part, that:

█ A person shall be entitled to a patent unless:

(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the application for patent, or

(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or ...

(g) before the applicant's invention thereof the invention was made in this country by another who had not abandoned, suppressed or concealed it.

35 U.S.C. § 102(a), (b), (g); *Continental Can. Co. USA, Inc.*, 948 F.2d at 1267. Anticipation under § 102 requires a showing that the "identical invention that is claimed is known to others and thus is not new." *Id.* The accused infringer demonstrates that a patent claim is "anticipated" and therefore invalid "if each and every limitation is found either expressly or inherently in a single prior art reference." *Celeritas Technologies Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed.Cir. 1998), *cert. denied* 525 U.S. 1106, 119 S.Ct. 874, 142 L.Ed.2d 774 (1999). "The disclosure need not be express, but may be anticipated by inherency where it would be appreciated by one of ordinary skill in the art." *Glaxo*, 52 F.3d at 1047 *citing Continental Can Co. USA, Inc.*, 948 F.2d at 1268.

█ Under § 102(a) prior art anticipates the patented invention where the prior art is "known or used by others" prior to the date of invention. *Carella v. Starlight Archery and Pro Line Co.*, 804 F.2d 135, 139 (Fed.Cir.1986). This phrase necessitates a finding that the public must have access to the knowledge of the prior art. *Id.* Generally, any "non-secret use" of the process or invention "in its natural and intended way is public use." *Kardulas v. Florida Machine Products Company*, 438 F.2d 1118, 1123 (5th Cir.1971). Exposure to customers is considered to be public use. *Id. citing Carella*, 804 F.2d at 139. Furthermore, a court may find public use where there is non-secret use of a claimed process in the usual course of producing articles for commercial use. *W.L. Gore & Associates v. Garlock, Inc.*, 721 F.2d 1540, 1549 (Fed.Cir.1983).

The defendant asserts that both the 379 and the 372 patents are invalid because they constitute prior art. Defendant argues that because the ceramic bracket embodied in claims one, two and six of the 379 patent and the process described in claims one, two, and four of the 372 patent were in public use or on sale in the United States more than one year before the date of those applications which were filed on November 29, 1993, they are invalid under 35 U.S.C. § 102(b). The plaintiffs admit that they did not begin working on the project that led to the 372 and 379 patents until 1991. The bracket and methodology at issue were, according to defendant, in use in this country prior to 1991. Hence, defendant argues that the claims are also invalid under 35 U.S.C. § 102(a) and (g).

### (1) The 379 Patent

Essentially, defendant claims that the Starfire bracket, originally manufactured by a company that the defendant has since purchased, is prior art upon which the plaintiffs' patent is based. According to defendant, it tested the Starfire bracket by using the same debonding procedure described in the 370 patent. The bracket described in the 379 patent is debonded utilizing the 372 patent procedure. According to defendant, the Starfire bracket responded exactly as described in the 372 patent. Therefore, defendant argues that the patented bracket and the Starfire bracket are similar products. (Def's Opp. at 9–11; Ruiz–Vela Decl., Exh. A.)

Defendant notes that the bracket described in the 379 patent and the Starfire bracket have a similar web located at the bottom of a similar vertical channel. Defendant claims that when it bonded the Starfire bracket to a tooth and then debonded it using the exact specifications in the 372 patent, the ceramic web fractured just as the 372 patent indicates it will. (Ruiz–Vela Decl. at ¶ 11.)

In claim one of the 379 patent, the bracket is compromised of a mesial section, a distal section, and an archwire slot extending in a mesial-distal direction. The bracket contains an elongated channel ex-

tending in a occusal-gingival direction between the mesial and distal sections. The channel has a depth greater than the archwire depth. According to defendant, the Starfire bracket also contains a frangible web. Defendant asserts, based on the above common qualities, that claim one of the 379 patent is anticipated.

As to claim two, the web at the base of the channel also integrally interconnects the mesial and distal sections. As to claim six of the 379 patent, the mesial and distal sections of the lower Starfire brackets are substantially identical. (Ruiz–Vella Decl. at ¶¶ 13–15.)

Plaintiffs rebuff defendant's comparisons as being nothing more than hindsight. (Pl's Reply at 6.) It is clear that no one in defendant's employ attempted to debond a Starfire bracket as described in the 372 patent except in motion of this litigation. In fact, defendant previously recommended two methods for debonding the Starfire bracket, both of which are far different than that described in the 372 patent.

Defendant argues that the prior art inherently anticipated the 379 patent.

Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient.

*MEHL/Biophile International Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed.Cir. 1999). In order to establish that the prior art inherently anticipates the patent, it must "function in accordance with, or include[ ], the claimed limitations it anticipates." *Id.* It is not sufficient that there is a possibility that something may occur. As such, occasional results do not show inherency. *Id.* In order for the Court to find that the Starfire bracket anticipated the 379 patent inherently, there must be

substantial evidence that the Starfire bracket performed identically as described in the 379 patent.

This is not the case with the Starfire bracket. A close examination of the results of defendant's testing of the Starfire bracket show that defendant's employees were able to debond only five of the ten Starfire brackets in the manner described in the 372 patent.[3] (Farzin–Nia Decl., Exh C.) The plaintiffs also submitted four declarations from independent orthodontists familiar with the Clarity product, who claimed to have a 94% failure rate when they attempted to debond the Starfire bracket. (Pl's Reply at 12; Feldman Decl. at ¶¶ 8–10; Hyman Decl. at ¶¶ 8–14; Girgis Decl. at ¶¶ 7–14.) In *Glaxo Inc.*, 52 F.3d at 1047, the Federal Circuit found that there was no anticipation where the practice, when repeated, did not always yield the same results as the patent in question.

As one judge of this court has noted, "[t]he Courts, Supreme, Appellate, and District, consistently, since *Tilghman v. Proctor*, 102 U.S. 707, 12 Otto 707, 26 L.Ed. 279 (1880), have held that unintended and unrecognized prior production does not negate novelty." *Pfizer, Inc. v. Int'l Rectifier Corp.*, 545 F.Supp. 486, 508 (C.D.Cal.1980). There, district court relied on the Supreme Court's *Tilghman* decision to find that similarities produced "accidentally and unwittingly" while the inventors were in pursuit of something else "without exciting attention and without it even being known what was done or how it had been done" is not anticipation. *Pfizer*, 545 F.Supp. at 508 *citing Tilghman*, 102 U.S. at 711–12, 12 Otto 707. Where the inventors of the prior art did not intend the product to be used in that fashion and it was not in fact used in that fashion there is no anticipation. *Pittsburgh Iron and*

*Steel Foundries Co. v. Seaman–Sleeth Co.*, 248 F. 705, 709 (3rd Cir.1917).

As both defendant's and plaintiffs' tests show, the Starfire bracket that the defendant claims as prior art could not be debonded always as indicated in the 379 patent, claims 1, 2 and 6 of the 379 patent were not anticipated inherently. Where, the language of claim one of the 379 patent was not an inherent feature of the Starfire bracket there can be no anticipation defense. Therefore, the Court finds that as to the 379 patent, defendant has not raised a substantial question as to the validity of the patent. The 379 patent is hence, presumed to be valid.

### (2) The 372 Patent

■ The defendant also argues that the 372 patent is anticipated and therefore invalid. The defendant argues that the method of debonding described in the 372 patent, explained as "pinching the mesial and distal sections of the bracket together, thereby pivoting one or both of the sections away from the tooth and fracturing a frangible ceramic web that integrally interconnects the mesial and distal sections," was already being openly practiced by orthodontists years prior to the issuance of the patent. (Def's Opp. at 12.)

Defendant relies on four declarations to support this assertion, two from orthodontists, Drs. Lippitz and Moles, and two from orthodontic technicians who work for Dr. Moles, Cecchini and Cassity. Dr. Lippitz states in his declaration that as early as 1988 he began debonding a particular brand of ceramic bracket, Transcend, distributed by plaintiffs, by forming a grove or channel in the body of the bracket and then pinching the mesial and distal sections of the bracket to fracture the bracket and debond it from the tooth. He used a

---

**3.** Furthermore, one of the individuals who submitted a declaration on behalf of the defendant, Dr. Michael Swartz, regarding the ability to debond the Starfire bracket as described in the 379 patent, wrote an article in 1988 that stated that ceramic brackets, including the Starfire bracket could not be debonded by "compressing the wings together." (Pl's Reply at 11, Cohen Decl., Ex. 3.) Defendant is now claiming that the Starfire bracket can be debonded in just such a fashion.

fine diamond high speed burr to cut or grind a vertical channel into the outer surface of the bracket. The channel he created divided the bracket into mesial and distal sections, but left them connected by a thin bridge of ceramic material. (Lippitz Decl. at ¶¶ 4–5.)

Dr. Moles states in his declaration that when he was discussing the difficulties he was having debonding ceramic brackets from patients' teeth at a orthodontic study group, Dr. Lippitz suggested the technique described above. He began using the procedure in 1989 and continued using it until 1994. (Moles Decl. at ¶¶ 8–9.) Dr. Moles states that the process he used after creating the channel was the same and had the same results as the process described in the 372 patent. (Moles Decl. at ¶ 9.)

Dr. Moles claims he used the process openly and with hundreds of patients. Cecchini and Cassity both state in their declarations that they observed Dr. Moles using the procedure described above openly with patients for a number of years. (Cecchini Decl. at ¶¶ 4–7; Cassity Decl. at ¶ 3.)

Plaintiffs have recently taken the depositions of all four declarants and assert that their testimony under oath does not corroborate the declarations. Dr. Lippitz testified in his deposition that he cut through the bracket all the way and through the adhesive as well. (Lippitz Dep. at 102:21–103:17.) [4] This would be different than the procedure identified in claim one of the 372 patent as well as in his declaration. Similarly, Dr. Moles testified that he was not always able to tell how far he had cut through the bracket, and did not state that he always left a complete layer of bracket material remaining so as to make it similar to the web described in the patent. (Moles Dep. at 101:21–102:19.) In addition, Dr. Moles failed to confirm that the methodology he employed to remove the brackets contained two other of the elements of claim one, namely that the pliers were located "buccolabially of a base of the bracket" and that he pivoted the

bracket during debonding. (Pl's Reply at 15; Moles Dep. at 110:1–19.)

Cassity and Cecchini were similarly unable to corroborate the statements made in their declarations during their depositions. Cassity could not state how deeply into the bracket Dr. Moles cut or whether he ground through the bracket entirely. She was also unable to state that the bracket pivoted. (Cassity Dep. at 28:16–29:20; 31:19–32:9; 34:5–35:4) Cecchini was unable to state how deeply Dr. Moles cut or whether the cut was deeper than the archwire slot. (Cecchini Dep. at 33:25–34:13.)

Defendant argues that the routine and open use of the practice by Drs. Lippitz and Moles constitutes an "on sale" bar under 35 U.S.C. § 102(b). To find that the invention was "on sale" requires that the "claimed invention asserted to be on sale was operable, the complete invention claimed was embodied in or obvious in view of the device offered for sale, and the sale or offer was primarily for profit rather than for experimental purposes." *Robotic Vision Systems, Inc. v. View Engineering, Inc.,* 112 F.3d 1163, 1167 (Fed. Cir.1997). The rule applies even where the claimed invention describes a methodology, as here. *Id.*

Defendant further asserts, that the 372 patent is invalid under § 102(a)(b) and (g) because Drs. Moles and Lippitz were publically using that procedure. Public use of an invention is "any use of that invention by a person other than the inventor who is under no limitation, restriction or obligation or secrecy to the inventor." *State Indus. v. Rheem Manufacturing Co.,* 223 U.S.P.Q. 305, 316–317 (M.D.Tenn.1984) *citing Egbert v. Lippmann,* 104 U.S. 333, 14 Otto 333, 26 L.Ed. 755 (1881). The fact that the use is done openly and in the ordinary course of business without an attempt to conceal the use is sufficient to find the work public. *Id.*

4. The depositions are attached to the Cohen Declaration.

Both the on sale and public use analysis are unnecessary, as the plaintiffs have sufficiently discredited the declarations submitted by the defendant. In addition, the Court is not persuaded that the process described by Drs. Moles and Lippitz in their declarations is the same as the process described in the 372 patent. Drs. Moles and Lippitz had to grind a channel into the bracket, a process which is not described in the 372 patent.

■ While the Court need not reach the issue, plaintiffs have also argued that an inventor's testimony alone is not enough to establish clear and convincing evidence of priority of invention. *Thomson, S.A. v. Quixote Corp.*, 166 F.3d 1172, 1175 (Fed. Cir.1999). There must be some corroboration of the inventor's claims. *Id.*

Here, two orthodontists have submitted declarations stating that they used the debonding technique patented by the plaintiffs years prior to plaintiffs' patent being issued. Defendant argues that the two would be considered disinterested parties under the holding of *Thomson* and hence, there is no need for corroboration.

> According to the Federal Circuit:
> the corroboration rule is not only to counterbalance the self-interest of a testifying inventor against the patentee. We therefore hold that corroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise in a position where he or she stands directly and substantially to gain by his or her invention being found to have priority over the patent claims at issue.

*Id.* at 1176.

Dr. Moles is a customer of the defendant and an occasional lecturer on its behalf. Plaintiffs point out that in his work for the defendant they have paid for him to travel all over the world, including several countries in both Asia and Latin America. (Pl's Reply at 19.) He is paid $700–$1500 on top of his expenses. He also promotes the sale of his books at the defendant's

events. *Id.* Dr. Lippitz has no connection to the defendant other than being a customer. (Def's Opp. at 19.)

The defendant presents no corroborating evidence for Dr. Moles' testimony. Plaintiffs were able to confirm this omission in the recent depositions taken of the four witnesses. (Pl's Reply at 17.) Dr. Moles fits within the Federal Circuit's definition of an interested party in need of corroboration. As no such corroboration was offered, his testimony is of little value.

Although the Court finds that Dr. Lippitz is not an interested party, the Court finds his testimony to be insufficient to establish prior art. Dr. Lippitz testified at his deposition that it was only after three or four phone calls that he remembered the specifics of the technique defendant argues he invented. Further, he did not initially recall his conversation with Dr. Moles. (Pl's Reply at 18.)

The Court, therefore finds that defendant has failed to raise a substantial question as to the validity of the 372 patent as well. The Court finds, for the purposes of this proceeding only, that the presumption of validity of the 372 patent has not been rebutted by defendant.

## 2. *Irreparable Injury*

■ Plaintiffs assert that they will suffer irreparable injury if the Court does not enjoin the defendant from selling its inspire! bracket. A strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee. *Reebok Intern., Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed.Cir.1994).

■ In *Nutrition 21*, the Federal Circuit found that without a clear showing of both validity and infringement, a presumption of irreparable harm does not arise at the preliminary injunction stage. *Nutrition 21*, 930 F.2d at 871. "Neither the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special

circumstances justifying the extraordinary relief of an injunction prior to trial." *Id.* at 871. Because plaintiffs have made a showing both that the patents are valid and that they were infringed, there is a presumption that plaintiffs will suffer irreparable harm.

 The whole premise behind the institution of the patent system was to allow one party to exclude another from taking advantage of a new invention. Therefore, it is often the case that monetary damages will not suffice in patent cases. *Hybritech,* 849 F.2d at 1457. There is no assumption, however, that money damages will not be adequate in a patent infringement case. The plaintiff must affirmatively demonstrate that money damages will be inadequate. *Nutrition 21,* 930 F.2d at 872.

 In *Bio–Technology General Corp.,* the Federal Circuit found that loss of revenues and goodwill were adequate justifications for a finding of irreparable harm. *Bio–Technology General Corp.,* 80 F.3d at 1566. In support of their argument, plaintiffs claim that orthodontists develop and maintain relationships with product suppliers and that if an orthodontist develops a relationship with the defendant's company and uses the inspire! product it will hurt both plaintiffs' ceramic bracket market position as well as its other orthodontic products. Moreover, plaintiffs point to the long duration of treatment that orthodontic patients undergo as an indication that orthodontists will at least maintain whatever relationship they establish with the defendant throughout the treatment. In other words, once the orthodontist begins to utilize the inspire! bracket he/she will have to continue using the bracket for between one and three years, the duration of the average treatment. Plaintiffs assert that they cannot be compensated for this loss with monetary damages. Defendant refutes these arguments by providing testimony that orthodontists will buy products from more than one company, and that many faithful Ormco customers were buying plaintiffs' products. (Iserman Decl. at ¶¶ 9–12.)

Plaintiffs also argue that its introduction of the Clarity bracket made it the industry leader and that allowing defendant to market the inspire! bracket, which directly infringes on plaintiffs' patents will damage its reputation as a market leader. If defendant is allowed to free ride on plaintiffs' innovation and technological achievements it will permanently injure plaintiffs' reputation and goodwill within the orthodontic community. The sale of the defendant's product will, most definitely, hurt plaintiffs' market share and profitability. This is the case in almost all patent cases where two competing products will be competing in the market for the duration of the litigation.

At the preliminary injunction stage, the Federal Circuit has found it relevant that the defendant possess extensive assets that would enable it to pay substantial damages if awarded. Such circumstances may mitigate against granting injunctive relief. *Nutrition 21,* 930 F.2d at 871. In the present case, plaintiffs have acknowledged that the defendant is the largest distributor of orthodontic products in the world. It would be financially capable of paying damages awarded by the Court.

Despite the defendant's ability to pay monetary damages to plaintiffs, the fact that plaintiffs will lose both market share and goodwill for the duration of this litigation weighs in favor of the plaintiffs. The presumption of irreparable harm rests with the plaintiffs who have shown both validity and infringement; defendant has not offered sufficient evidence to refute this presumption.

### 3. *Balance of Hardships*

 As the market leader in ceramic brackets, the fact that plaintiffs may lose their role as market leader and might lose consumer confidence tips the balance in their favor. In addition, the fact that plaintiffs have invested more time and effort into marketing their patented invention also weighs in favor of plaintiffs. Defendant's bracket appears to be nothing

more that a knock-off of plaintiffs' patented invention. Defendant has virtually admitted that it is attempting to capitalize on plaintiffs' success by utilizing advertisements that place the competing products side by side.

Defendant argues that if the Court grants the preliminary injunction, it will lose upwards of $10 million. Unlike, plaintiff, who if victorious will receive monetary damages, defendants will lose money regardless of whether it is ultimately victorious. (Def's Opp. at 23.)

While defendant may be harmed by a decision to issue a preliminary injunction, it is clear that the plaintiffs will suffer greater harm if the Court does not grant injunctive relief and therefore the balance of hardships tips in favor of plaintiffs.

### 4. *The Public Interest*

A public interest exists in enforcing valid patent rights. *Hybritech,* 849 F.2d at 1457. Thus, district courts must consider "whether there exists some critical public interest that would be injured by the grant of the preliminary injunction." *Id.*

The only public interest cited by plaintiffs in support of issuing a preliminary injunction is the public interest in protecting patents. If this were a sufficient public interest it would render the public interest element of the four part test superfluous, as it would always favor the plaintiff. The focus, according to the Federal Circuit, is "whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Hybritech,* 849 F.2d at 1458. Typically, courts have found the public interest is served in cases involving cutting edge medical treatments and other products which if removed from the market would harm the general public. *Id.* Since ceramic braces are not such a product, neither party prevails on the public interest factor.

### 5. *Conclusion*

Plaintiffs have made an initial showing that the two patents at issue are both valid and infringed, hence showing a likelihood of success on the merits, that plaintiffs will suffer irreparable harm if the Court does not grant the application for a preliminary injunction, and that the balance of hardships favors plaintiffs. The fourth element of the Federal Circuit's test favors neither party. After conducting the analysis required by the Federal Circuit, the Court finds that the plaintiffs are entitled to a preliminary injunction to enjoin defendant from selling its inspire! brackets.

### C. Bond

Pursuant to Federal Rule of Civil Procedure § 65(c), plaintiffs are required to post a bond before the Court issues its preliminary injunction. If the defendant ultimately prevails in this litigation, the bond will ensure defendant that it will be able to recoup some of the damages it suffered in not being able to market its product. The bond is intended to compensate a wrongfully enjoined party. *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.,* 16 F.3d 1032, 1036 (9th Cir.1994). The bond amount requested by plaintiffs, $50,000, is insufficient. However, the amount sought by defendant, $10 million, is excessive and based on purely speculative figures. The Court finds that a bond of $500,000 is appropriate. Accordingly, plaintiffs shall post a $500,000 bond before the preliminary injunction is effective.

### III.

### Conclusion

For the reasons stated above, the Court concludes that a preliminary injunction should be granted as the Federal Circuit's four part test strongly favors the plaintiffs. Accordingly, plaintiffs' application for a preliminary injunction is GRANTED. Accordingly, it is hereby ordered that plain-

tiff post a $500,000 bond pursuant to Fed. R. Civ. Proc. § 65(c).

Defendant Ormco and its officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with it, are preliminarily enjoined during the pendency of this action:

(1) from infringing, or actively inducing the infringement of, United States Patents Numbers 5,439,379 and 5,366,372;

(2) from making, using, importing into the United States, offering for sale or selling any orthodontic bracket which embodies one or more of the claims of the United States Patent Number 5,439,379; including, without limitation, Ormco's inspire! orthodontic bracket;

(3) from advertising, promoting, instructing, recommending, encouraging, or otherwise actively inducing others to practice one or more of the methods claimed in the United States Patent Number 5,366,-372; including, without limitation, supplying customers with Ormco's inspire! Bracket Identification and Placement guide which includes Ormco's "Debonding Procedure" for Ormco's inspire! orthodontic bracket;

(4) The injunction shall not be effective until plaintiff post a $500,000 corporate surety bond.

The foregoing shall constitute the Court's findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a) and 65(d).

**IT IS SO ORDERED.**