**MEHL/BIOPHILE INTERNATIONAL CORP., Selvac Acquisitions Corp. and Nardo Zaias, M.D., Plaintiffs–Appellants,**

v.

**Sandy MILGRAUM, M.D., Palomar Medical Technologies, Inc., and Spectrum Medical Technologies, Inc., Defendants–Appellees.**

No. 99–1038.

United States Court of Appeals, Federal Circuit.

Sept. 30, 1999.

Rehearing Denied Oct. 27, 1999.

Jeffrey A. Schwab, Abelman, Frayne & Schwab, of New York, New York, argued for plaintiffs-appellants. With him on the brief were Michael Aschen and Anthony J. DiFilippi. Of counsel on the brief was George A. Arkwright, Schlesinger, Arkwright & Garvey, LLP, of Arlington, Virginia.

Wayne L. Stoner, Hale and Dorr, LLP, of Boston, Massachusetts, argued for defendants-appellees. With him on the brief were William F. Lee and James M. Hall. Of counsel on the brief was Thomas A. Reed, Palomar Medical Technologies, Inc., of Lexington, Massachusetts.

Before MAYER, MICHEL, and RADER, Circuit Judges.

RADER, Circuit Judge.

In this patent infringement action, MEHL/Biophile International Corp., Selvac Acquisitions Corp., and Dr. Nardo Zaias (collectively, MEHL/Biophile) asserted that Dr. Sandy Milgraum, Palomar Medical Technologies, Inc., and Spectrum Medical Technologies, Inc. (Milgraum) infringed U.S. Patent No. 5,059,192 (the '192 patent). On its motion for summary judgment, Milgraum contended that all of the '192 patent claims were anticipated by an instruction manual for the Spectrum RD–1200 laser and by a 1987 Journal of Investigative Dermatology article authored by Dr. Luigi Polla and others (the Polla article). The district court agreed that the manual anticipated the claims, granted summary judgment of invalidity, and dismissed the action. *See Mehl/Biophile Int'l*

*Corp. v. Milgraum*, 8 F.Supp.2d 434, 47 USPQ2d 1248 (D.N.J.1998). Although this court disagrees that the manual discloses all the elements of the claimed invention, because the Polla article does, this court affirms.

### I.

The '192 patent, entitled "Method of Hair Depilation," claims a method for removing hair using a laser. Hairs grows out of hair follicles, tubular apertures in the skin. The collection of germ cells from which hairs grow, known as the papilla, lies at the base of the follicle. The '192 patent claims a method for destroying the papilla, thereby preventing hair regrowth. The written description discloses the use of a Q-switched ruby laser to effect the destruction.

At a meeting of the American Academy of Dermatology, Dr. Zaias visited Spectrum's booth where Spectrum displayed such a laser, known as the RD-1200. Spectrum sold the RD-1200 for use in removing tattoos. Dr. Zaias recognized that the same principles that govern laser absorption in skin pigmented by a tattoo would also focus laser absorption on the natural skin pigment found in the papilla. More specifically, the papilla contains granules (called melanosomes) of a dark pigment (called melanin). A Q-switched ruby laser aimed at the hair follicle will penetrate the skin and reach the papillary melanin. At a particular wavelength, the laser will heat up and destroy the papilla without damaging surrounding tissue.

Claim 1 of the patent, the only independent claim, reads:

1. A method of hair depilation, comprising the steps of:

a) aligning a laser light applicator substantially vertically over a hair follicle opening, said applicator having an aperture of sufficient area to surround a hair follicle and overlie its papilla;

b) applying through said aperture to the hair follicle a pulse of laser energy of a wavelength which is readily absorbed by the melanin of the papilla and having a radiant exposure dose of sufficient energy and duration to damage its papilla so that hair regrowth is prevented and scarring of the surrounding skin is avoided.

Dependent claims 2-6 further specify parameters of the laser light applicator, energy delivery, and the type of laser.

MEHL/Biophile sued Milgraum in the United States District Court for the District of New Jersey for infringement of all the claims of the '192 patent. Milgraum moved for summary judgment of invalidity based on 35 U.S.C. § 102 (1994), arguing that two prior art references each teach all the limitations of the claims. As noted at the outset, Milgraum relied on the manual for the RD-1200 laser which describes the use of a laser to remove tattoos. The manual teaches the use of a Q-switched ruby laser to remove a tattoo: "[E]nergy is selectively absorbed only by pigmented chromophores and not surrounding tissue, greatly reducing the risk of scarring."

Milgraum also relied on the Polla article entitled "Melanosomes Are a Primary Target of Q-Switched Ruby Laser Irradiation in Guinea Pig Skin." The Polla article documents "the tissue damage induced by Q-switched ruby laser pulses in black, brown, and albino (control) guinea pigs ... in an effort to define the nature and extent of pigmented cell injury." The method involves epilating guinea pigs with soft wax, holding the aperture of the laser in contact with the skin, and pulsing the laser. Using an electron microscope, the researchers observed "disruption of melanosomes deep in the hair papillae."

The district court considered both references, but ultimately rested its decision on the RD-1200 manual. MEHL/Biophile appeals. MEHL/Biophile makes several arguments for disregarding the manual as an anticipating reference. For instance, MEHL/Biophile argues that the manual does not teach use of the laser to remove hair at all. Further MEHL/Biophile contends that the manual does not disclose a substantially vertical alignment, a claim element. As for the Polla article,

MEHL/Biophile argues that the reference relates to guinea pig skin and does not mention hair depilation. In addition, MEHL/Biophile contends that the epilation of the guinea pig backs removed the papilla so the laser treatment could not have damaged the papilla.

## II.

This court reviews a district court's grant of summary judgment by reapplying the standard applicable at the district court. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In its review, this court draws all reasonable inferences in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ "To anticipate a claim, a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." *In re Schreiber*, 128 F.3d 1473, 1477, 44 USPQ2d 1429, 1431 (Fed. Cir.1997). As this court's predecessor stated in *In re Oelrich*, 666 F.2d 578, 581, 212 USPQ 323, 326 (CCPA 1981) (quoting *Hansgirg v. Kemmer*, 26 C.C.P.A. 937, 102 F.2d 212, 214, 40 USPQ 665, 667 (1939)) (internal citations omitted):

> Inherency, however, may not be established by probabilities or possibilities. The mere fact that a certain thing *may* result from a given set of circumstances is not sufficient. If, however, the disclosure is sufficient to show that the natural result flowing from the operation as taught would result in the performance of the questioned function, it seems to be well settled that the disclosure should be regarded as sufficient.

Thus, a prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it. *See In re Oelrich*, 666 F.2d at 581; *Verdegaal Bros., Inc. v.*

*Union Oil Co. of Cal.*, 814 F.2d 628, 630, 2 USPQ2d 1051, 1053 (Fed.Cir.1987). Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claimed limitations, it anticipates. *See In re King*, 801 F.2d 1324, 1326, 231 USPQ 136, 138 (Fed.Cir. 1986). Inherency is not necessarily coterminous with the knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art. *See id.*, 801 F.2d at 1326.

### The RD–1200 Manual

█ The RD–1200 manual cannot anticipate because it does not teach all the limitations of the claimed invention. Claim 1 includes the step of "aligning a laser light applicator substantially vertically over a hair follicle opening." The parties agree that the manual does not discuss hair follicles, let alone aligning the laser over a hair follicle opening. Thus, the manual does not explicitly teach alignment substantially vertically over a follicle opening. Without explicit teachings of this claim limitation, this court must nonetheless examine whether such alignment is inherent in the manual's disclosure.

█ The manual teaches aiming the laser at skin pigmented with tattoo ink. The record discloses no necessary relationship between the location of a tattoo and the location of hair follicles. Therefore, an operator of the RD–1200 laser could use the laser according to the manual without necessarily aligning the laser "substantially vertically over a hair follicle opening." The possibility of such an alignment does not legally suffice to show anticipation. *See In re Oelrich*, 666 F.2d at 581. Occasional results are not inherent. Because this court holds that the manual does not inherently teach this limitation of the claimed invention, it does not address MEHL/Biophile's other arguments. To anticipate, a single reference must teach every limitation of the claimed invention. Without an inherent teaching about alignment, the manual does not anticipate the claimed invention.

### The Polla Article

▇ Although the district court did not reach the Polla article in its anticipation analysis, "[a]ppellees always have the right to assert alternative grounds for affirming the judgment that are supported by the record." *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 822 n. 1, 11 USPQ2d 1321, 1322 n. 1 (Fed.Cir.1989). Milgraum asserts that the Polla article constitutes such an alternative ground. This court agrees.

▇ As to the "aligning" step, the Polla article does not suffer from the same deficiency as the manual. It is not a question of probabilities as to whether a person of ordinary skill following the teachings of the article will align the laser light applicator over a hair follicle. The researchers focused their study on the epilated backs of guinea pigs. No one disputes that guinea pigs have hairy backs. Indeed, the article itself is replete with references to the irradiation of hair follicles and resulting follicular damage:

> At 0.8 $J/cm^2$, epidermal lesions were more marked and involved hair follicles 0.3 mm below the skin surface.... [L]esions were also present 0.5 mm deep in follicles.

> [E]ven at the highest radiant exposure (1.2 $J/cm^2$), brown [guinea pig] skin never showed full-thickness epidermalnecrosis and at 0.8 $J/cm^2$, follicular damage was observed to a depth of 0.5 mm and at 1.2 $J/cm^2$ to a depth of 0.7 mm below the skin surface.

> .     .     .     .     .

> Follicular changes were similar in nature and extent to the epidermal alterations described above, and were associated with melanosome disruption.

> .     .     .     .     .

> Specifically, we have shown that ... pigmented structures in the deep dermis such as hair follicles are affected....

The article further contains a photograph showing "[f]ollicular changes induced by ruby laser." The changes include disruption of "melanosomes contained within fol-

licular epithelium." Moreover the article specifically mentioned disruption of the hair papillae:

> At 0.8 and 1.2 $J/cm^2$, individual melanosomes were more intensely damaged and disruption of melanosomes deep in the hair papillae was observed.

Finally, the method of exposing the Q-switched ruby laser to the guinea pig skin also inherently teaches substantially vertical alignment over hair follicle openings:

> The collimated laser beam struck a circular aperture, 2.5 mm in diameter, held in contact with the skin of the animals.

The record shows that holding the collimated laser in contact with the skin would align it perpendicular to the skin surface and therefore substantially vertically over follicle openings. Viewed as a whole, this disclosure shows, in the words of *In re Oelrich,* 666 F.2d at 581, that the "natural result flowing from the operation as taught would result in" alignment of the laser light over a hair follicle, as claimed. No reasonable jury could find otherwise.

MEHL/Biophile's remaining arguments concerning the Polla article are unavailing. The Polla article concerns itself with guinea pig, rather than human, skin, but that difference is irrelevant to the anticipation analysis. Nothing in the claim limits the method's reach to human skin. Similarly, the Polla article's failure to mention hair depilation as a goal is similarly irrelevant. MEHL/Biophile does not dispute on appeal that the laser operating parameters disclosed in the article substantially coincide with those disclosed in the patent. Accordingly, to the extent the embodiment in the patent achieves hair depilation, so does the Polla method. Where, as here, the result is a necessary consequence of what was deliberately intended, it is of no import that the article's authors did not appreciate the results. *See W.L. Gore & Assocs. v. Garlock, Inc.,* 721 F.2d 1540, 1548, 220 USPQ 303, 309 (Fed.Cir.1983). Finally, as mentioned earlier, the article itself belies MEHL/Biophile's argument that the wax epilation prescribed by the article resulted in removal of the papilla.

The article specifically states that "disruption of melanosomes deep in the hair papillae was observed." MEHL/Biophile's expert testimony contradicting the plain language of the reference does not create a genuine issue of fact.

Thus, the Polla article anticipates claim 1 of the '192 patent. Because MEHL/Biophile has not separately argued the validity of the dependent claims, the judgment of invalidity as to those claims also stands.

## COSTS

Each party shall bear its own costs.

*AFFIRMED*