**SYSTEMS DIVISION, INC.,**
**Plaintiff–Appellant,**

v.

**TEKNEK LLC, Defendant–Appellee.**

No. 02–1229.

United States Court of Appeals,
Federal Circuit.

DECIDED: Feb. 21, 2003.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and DYK, Circuit Judge.

DYK, Circuit Judge.

Systems Division appeals from a final decision of the United States District Court for the Central District of California granting summary judgment of invalidity of U.S. Patent Nos. 5,813,073 ("the '073 patent"), 5,989,358 ("the '358 patent"), and 6,200,392 ("the '392 patent") (collectively "the patents-in-suit"). *Sys. Div., Inc. v. Teknek LLC*, No. 00–135 (C.D. Cal. Sept. 20, 2001) ("Judgment"). The court held that the inventions claimed in the patents-in-suit were obvious under 35 U.S.C. § 103. Because we conclude that questions of material fact remain as to the obviousness of the claims, we vacate the grant of summary judgment and remand to the district court for further proceedings.

## BACKGROUND

Systems Division is the assignee of the '073, '358, and '392 patents, respectively entitled "Sheet Cleaning Apparatus with Cartridge Roller Assembly," "Sheet Cleaning Apparatus with Cartridge Roller Assembly and Method of Use," and "Sheet Cleaning Apparatus with Cartridge Roller Assembly and Method of Use." The patents all claim original priority back to U.S. Patent App. No. 722,857 ("the '857 application"), which issued as the '073 patent. The disclosures of the three patents are substantially identical, being generally directed to devices for removing foreign particles from sheets of material (referred to as "clean machine" technology).[1] In particular, the disclosed invention is useful for removing particles from the upper and lower surfaces of planar materials such as printed circuit boards.

---

1. Because the specifications of all three patents are substantially identical, citations to the '073 patent are used as exemplary of all the patents-in-suit.

The portion of the disclosed devices that provides the cleaning function is disclosed in Figure 3 (reproduced below).

Four rollers 52, 54, 56, and 58 (cleaning rollers), are positioned as vertically aligned pairs, the first pair 52 and 54 define a "nip" 62 into which a sheet to be cleaned is fed. The outer surfaces of the cleaning rollers comprise "a layer of resilient compressible material which has a surface tack or adhesion sufficient to transfer dust and other foreign particulate contamination from a sheet coming into compressive contact with the roller surface." '073 patent, col. 2, ll. 13–16. Rolls of adhesive-coated tape 64 and 66 (tape rolls) are each positioned in contact with a pair of the cleaning rollers, for cleaning the surfaces thereof. Thus, the cleaning rollers remove particles from the sheet, while the adhesive rollers remove those particles from the cleaning rollers. In normal operation, occasionally the cleaning rollers must be serviced in order to, for example, clean them more thoroughly than can be done by cleaning solely with the adhesive rollers.

The clean roller/adhesive roller portion of the disclosed device is conventional. *See* '073 patent, col. 2, ll. 32–33 (describing the cleaning portion as "similar to that described in U.S. Patent No. 5,349,714

[('the '714 patent')].”). The patentees described the disclosed invention of the '073 patent as an "improvement" over the sheet cleaning apparatus disclosed in the '714 patent. The prior art problem solved by the disclosed invention is described in the '073 patent as follows:

[The prior art] apparatus are typically arranged in a printed circuit board production line, with other, very expensive machines. When the sheet cleaning apparatus needs servicing, typically to clean the sheet cleaning rollers ... the apparatus must be disassembled to remove the rollers, or the operator must clean the rollers in place. With either technique, considerable time is required for this maintenance procedure, idling not only the sheet cleaning apparatus but the other, very expensive machines on the production line.

*Id.* at col. 1, ll. 13–22. The nature of the improvement disclosed in the '073 patent is to "provide a sheet cleaning apparatus which can be quickly serviced to minimize the machine down time." *Id.* at col. 1, ll. 24–25. On appeal, Systems Division describes the patentee's invention as "the concept of mounting the sheet cleaning rollers (rubber rollers) on a mounting or

slide element so that the sheet cleaning rubber roller assembly could be pulled from the side of the machine and held in a maintenance position allowing them to be easily replaced, thus not shutting down the assembly line." (Appellant's Br. at 3.)

The quick servicing aspect of the disclosed invention is provided by integrating the cleaning rollers into a removable cartridge assembly. The cartridge assembly is held in a telescoping slide carriage that is inserted into and removed from the side of the machine. When the cleaning rollers require servicing, the carriage slides from the side of the apparatus; the cartridge is then removed from the carriage and replaced. The cartridge is easily disengaged from a drive mechanism used to drive the lower cleaning rollers 54 and 58. It is also easily reengaged when servicing is completed. The ease of engagement is provided by hexagonal mating elements at the end of rollers 54 and 58, which slide into complementary hexagonal coupler elements 170 and 172 (Fig.4) connected to a drive mechanism that rotates the cleaning rollers.

On February 7, 2000, Systems Division filed the present suit against Teknek LLC ("Teknek") for infringement of the claims of the '073, '358, and '392 patents. The patents include 16, 18, and 35 claims respectively, including 3, 4, and 6 independent claims. The '073 patent includes solely apparatus claims, while the '358 and '392 patents include both apparatus and method claims. During the proceedings before the district court, the court focused on two of the claims from the '358 patent, which provide:

1. A sheet cleaning apparatus for cleaning foreign particles from at least one surface of a sheet, comprising:

a frame;

a removable sheet cleaning roller cartridge assembly including at least one sheet cleaning roller rotatably secured thereto for rotation about a sheet cleaning roller axis, said roller defining a peripheral roller surface;

a roller cleaning member having a contact surface, said contact surface adapted to transfer foreign particles from said peripheral surface of said cleaning roller to said contact surface of said roller cleaning member during sheet cleaning operations, said roller cleaning member having an external surface defining said contact surface and a cleaning element axis arranged substantially parallel to said roller axis; and

*mounting apparatus for mounting said roller cartridge assembly in relation to said frame, said mounting apparatus permitting ready removal and replacement of said roller cartridge assembly with another roller cartridge assembly to minimize down time* of said sheet cleaning apparatus while permitting off-line servicing of said removed roller cartridge assembly.

\* \* \* \* \* \*

5. The apparatus of claim 3 further comprising a drive apparatus for applying a rotational drive to said sheet cleaning roller, said drive apparatus including a drive coupler for selectively connecting said cleaning roller to said drive apparatus when said cartridge is in said operating position, and for disconnecting said cleaning roller from said drive apparatus when said cartridge is in said maintenance position.

Claim 1 of the '358 patent (emphasis added).

Systems Division filed a motion for a preliminary injunction, which the court denied. *Sys. Div., Inc. v. Teknek Ltd.*, No. 00–0135, at 1 (C.D.Cal. Oct. 30, 2000) ("Order Denying Preliminary Injunction"). The court found that Systems Division had

established a reasonable likelihood of success on its infringement charge, *id.* at 17–18, but that it had failed to meet its burden of establishing a reasonable likelihood of success on the issue of validity, *id.* at 23–24. The court construed only two limitations of claim 1 of the '358 patent (which it applied as exemplary of all of the claims of the patents-in-suit), specifically, "sheet cleaning roller cartridge assembly" and "mounting apparatus." *Id.* at 5–6. The key claim limitation at this stage was "mounting apparatus," which the court construed as a means-plus-function limitation corresponding to a structure including "a carriage member attached to an inner set of telescoping slide rails." *Id.* at 19.

After construing the claims, the district court proceeded to compare the purportedly invalidating prior art cited by Teknek against the claims. The primary prior art device cited by the district court against the claims of the patents-in-suit was the Teknek XCM 1830 ("1830"), a clean machine used for removing particulate matter from the surfaces of a sheet of glass. The court held that the cited 1830 prior art did not anticipate the claimed invention because it "does not utilize such a mounting apparatus. Instead, the prior art roller cartridge of the XCM 1830 slides directly into the side of the machine." *Id.* The court did find, however, that the adhesive rollers of the 1830 used "telescoping slide rails and [a] support member to slide the adhesive rollers out the side of the machine." *Id.* at 21. Based on the use of this mounting mechanism for the adhesive rollers of the prior art device, the court found that "the XCM 1830 prior art reference also suggests the use of a carriage member and slide rails for the purpose of easily removing and replacing the roller cartridge if so desired." *Id.* at 23. The court stated that "[it] finds no objective indicia of non-obviousness such as long felt need, commercial success, failure of others,

or copying based upon the documents before it." *Id.* Based on these findings the court concluded that Systems Division had not sufficiently shown a likelihood of success on the issue of validity of the patent claims.

In June 2001, Teknek filed a motion for summary judgment of invalidity of the patents-in-suit, and Systems Division filed cross motions for summary judgment on validity and infringement. The district court held hearings on July 9 and August 20, 2001, during which "the District Court was able to view, analyze, inspect and evaluate numerous prior art machines, ask questions from skilled artisans about how the machines worked, and personally observe the adhesive rolls and rubber cleaning rollers being coupled and uncoupled from the various machines." (Appellee's Br. at 9.) Following the hearings, the district court denied Teknek's motion for summary adjudication of the issue of infringement and granted Systems Division's motion for summary judgment of invalidity, declaring all of the claims "invalid under 35 U.S.C. §§ 102 and/or 103." *Judgment* at 1. While the judgment referred to invalidity under §§ 102 and/or 103, the order granting summary judgment relies only upon the theory of § 103 obviousness. *Order Granting Summary Judgment* at 1.

In reaching its conclusion of obviousness, the district court found that "[t]he basic clean machine design ha[d] been in use for over 20 years" and that "the level of ordinary skill in the clean machine industry is high." *Id.* at 5, 6. The court dismissed Systems Division's argument with respect to the scope of the relevant prior art, holding that "[i]t is not relevant what kind of material passes between the rollers . . . [or] the size of the machines." *Id.* at 6. As part of its holding, the district court "adopt[ed] as final its ruling in its previous Order Denying Preliminary In-

junction." *Id.* at 7. The district court concluded that:

> It would be obvious to those skilled in the art that a quick release coupling between the driver and the roller would further facilitate quick repairs or replacements in machines with a side pull-out for use in an assembly line environment.
>
> This, combined with the Court's prior ruling that the patents' sliding mechanism were [sic] also obvious, results in a finding that the patents are not valid.

*Id.* The court did not expressly address any claims other than claims 1 and 5 of the '358 patent.

Systems Division timely filed this appeal. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review a district court's grant of a motion for summary judgment without deference. *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1354, 60 USPQ2d 1091, 1097 (Fed.Cir. 2001); *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1362 (Fed.Cir.1998).

An initial matter that must be addressed is the legal theory upon which summary judgment was granted. The judgment refers to a grant of summary judgment of invalidity under 35 U.S.C. §§ 102 and/or 103. *Judgment* at 1. At the preliminary injunction stage the district court held that the claims were not anticipated. *Order Denying Preliminary Injunction* at 20. This holding was not modified at the summary judgment stage. Systems Division's statement of the issues on appeal refers only to the grant of summary judgment of obviousness. (Appellant's Br. at 1.) Similarly, Teknek supports the grant of summary judgment only on the ground of obviousness. (Appellee's Br. at 1.) Based on a

review of the record on appeal, there appears to be no basis for the district court's finding of invalidity under § 102. For purposes of this appeal, therefore, we treat the grant of summary judgment of invalidity as being based solely on obviousness under 35 U.S.C. § 103. The ultimate issue of obviousness under 35 U.S.C. § 103 is a question of law based on subsidiary factual inquiries. *Dennison Mfg. Co. v. Panduit Corp.*, 475 U.S. 809, 811, 106 S.Ct. 1578, 89 L.Ed.2d 817 (1986).

In past cases we have narrowly prescribed the conditions under which a district court may grant summary judgment of invalidity on the grounds of obviousness. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 723, 63 USPQ2d 1031, 1033 (Fed. Cir.2002) ("[A] district court properly may grant summary judgment on obviousness ... *only when the underlying factual inquiries present no lingering genuine issues.*" (emphasis added)); *Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 955, 43 USPQ2d 1294, 1295 (Fed.Cir. 1997); *Finish Eng'g Co. v. Zerpa Indus., Inc.*, 806 F.2d 1041, 1043, 1 USPQ2d 1114, 1115–16 (Fed.Cir.1986). This is so because of the complex and factual nature of an obviousness analysis.

### I. Claim Construction

The first step in an obviousness analysis is to construe the language of the claims. *Smiths Indus. Med. Sys., Inc. v. Vital Signs, Inc.*, 183 F.3d 1347, 1353, 51 USPQ2d 1415, 1419–20 (Fed.Cir.1999). The district court did not expressly provide a claim construction at the summary judgment stage, stating instead that "[t]he Court fully briefed the issues raised with regard to Claim 1 in the Order Denying Preliminary Injunction." *Order Granting Summary Judgment* at 3. At the preliminary injunction stage the court found that "[t]he only disputed limitations of ...

claim [1] are the 'removable sheet cleaning roller cartridge assembly' and 'mounting apparatus' elements." *Order Denying Preliminary Injunction* at 5–6. The court construed the "sheet cleaning roller cartridge assembly" recitation as "a unit structure receiving and holding at least one sheet cleaning roller in such a way as to allow the cleaning roller to rotate against a sheet good, and which permits ready insertion into a sheet cleaning apparatus." *Id.* at 8–9. The court construed the "mounting apparatus" recitation as a means-plus-function element under 35 U.S.C. § 112, ¶ 6, finding the corresponding disclosed structure to be:

> a slide assembly. The slide assembly includes a carriage member, which is a structure that provides support for the bottom of the cartridge assembly and receives and registers the cartridge assembly in place with upwardly extending pins. The slide assembly further includes two sets of opposed slide rails, which can telescope out the side of the clean machine.

*Id.* at 12. The court did not expressly provide a construction for claim 5 of the '358 patent, noting only that "as provided in the specifications, the coupling system between the driver for the rollers, and the rollers, allowed for the driver to be readily disconnected from the rollers, allowing the rollers to be replaced or cleaned as necessary, with minimum down time." *Order Granting Summary Judgment* at 4.

The parties do not dispute the "mounting apparatus" construction adopted and applied by the district court. This court, therefore, uses the district court's interpretation for purposes of this appeal. *WMS Gaming Inc. v. Int'l Game Tech.,* 184 F.3d 1339, 1348, 51 USPQ2d 1385, 1390 n. 2 (Fed.Cir.1999) ("[W]here, as here, the parties agree to a claim construc-

tion that is adopted by the district court, and neither party disputes that construction on appeal, we decline to raise an issue *sua sponte* that the parties have not presented."); *Seal–Flex, Inc. v. Athletic Track & Court Constr.,* 172 F.3d 836, 842, 50 USPQ2d 1225, 1228 (Fed.Cir.1999) (J. Bryson joined by J. Newman, concurring) ("We have no duty, with respect to claim construction or any other non-jurisdictional legal issue, to address questions the parties have not preserved for appeal and have not presented as grounds for challenging or supporting the judgment of the trial court.").

■ Additionally, Systems Division argues that we should construe an express limitation that was not addressed by the district court. Claim 1 of the '358 patent recites the claimed mounting apparatus as "permitting ready removal and replacement of said roller cartridge assembly with another roller cartridge assembly to minimize down time of said sheet cleaning apparatus while permitting off-line servicing of said removed roller cartridge assembly." As discussed above, the district court interpreted the "mounting apparatus" as a means-plus-function limitation. The above quoted language, therefore, defines attributes of the corresponding disclosed structure, and the equivalents thereof. The district court essentially failed to construe this language, instead merely restating the language of the claim. It is necessary, therefore, to construe the meaning of the cited claim language.

We begin claim construction with the ordinary meaning of the disputed claim term. *Inverness Med. Switz. GmbH v. Warner Lambert Co.,* 309 F.3d 1373, 1378, 64 USPQ2d 1933, 1936 (Fed.Cir.2002). Dictionaries provide evidence of a claim term's ordinary meaning. *Id. Webster's* defines a relevant definition of "ready" as "quick in some indicated action." *Web-*

ster's *Third New International Dictionary* 1890 (1968). Similarly, *Random House* defines "ready" as "prompt or quick in action, performance, manifestation, etc." *Random House Webster's Unabridged Dictionary* 1606 (2d ed.1998). Thus, "ready" in this context refers to the recited action's being quick. The plain language, however, does not distinguish those things that are "ready," as used in this claim, from those that fail to meet that required aspect of the invention.[2]

We note that claim 1 further recites that the purpose of the "ready removal and replacement" is "to minimize down time of said sheet cleaning apparatus while permitting off-line servicing of said removed roller cartridge assembly." The parties do not claim that this language is helpful in defining the meaning of the "ready removal and replacement language." We agree. This clause "merely states the result of [a] limitation[ ] in the claim [and] adds nothing to the patentability or substance of the claim." *Tex. Instruments Inc. v. United States Int'l Trade Comm'n,* 988 F.2d 1165, 1172, 26 USPQ2d 1018, 1023 (Fed.Cir. 1993).

Following a review of the plain language of a claim limitation, it is proper next to look to the remainder of the intrinsic evidence including the specifications and prosecution histories of the patents-in-suit. *Inverness Med. Switz. Gmbh v. Princeton Biomeditech Corp.,* 309 F.3d 1365, 1369–70, 64 USPQ2d 1926, 1930 (Fed.Cir.2002); *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir.1996). In large part, the specification does no more than confirm the dic-

tionary definition in suggesting that "ready" means quick. The summary of the invention section of the '073 patent provides that "the cartridge needing maintenance can simply be quickly removed and replaced with a fresh cartridge." '073 patent at col. 1, ll. 39–41. The detailed description provides similar disclosure, providing that "[t]he sheet cleaning apparatus can be quickly serviced by replacement of the cartridge assembly." *Id.* at col. 5, ll. 29–30.

■ However, the specification also describes the disclosed invention as "an improvement to the sheet cleaning apparatus described in [the '714 patent]." *Id.* at col. 1, ll. 11–12. That patent was incorporated by reference in its entirety into the '073 patent, thus rendering the '714 patent intrinsic evidence with respect to the patents-in-suit. *Advanced Display Sys. Inc. v. Kent State Univ.,* 212 F.3d 1272, 1282, 54 USPQ2d 1673, 1679 (Fed.Cir.2000) ("Incorporation by reference provides a method for integrating material from various documents into a host document ... by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein."). The patentee distinguished the prior art disclosed in the '714 patent because "the apparatus must be disassembled to remove the rollers, or the operator must clean the rollers in place ... [for which] considerable time is required." '073 patent, col. 1, ll. 17–19. As with the device disclosed in the '073 patent, the '714 patent device incorporated "two pairs of sheet-contacting cleaning

---

**2.** In opposing summary judgment before the district court, Systems Division argued that the specification "teaches mounting the cartridge assembly in the carriage in such a manner that it can be removed and replaced in 30–45 seconds." (J.A. at 356.) Similarly, on appeal Systems Division describes "the

problem of a *thirty second* removal and replacement of rubber rollers in an assembly line." (Appellant's Br. at 11 (emphasis added).) Systems Division, however, cites no support for imposing either of these time limits as an explicit construction for the "ready removal and replacement" claim limitation.

rollers 52, 54 and 56, 58 ... disposed in vertical alignment adjacent each other to define [nips]." '714 patent, col. 3, ll. 9–13. Thus, the "readiness" of the roller removal/replacement disclosed in the improvement '073 patent was distinguished from the "considerable time" required in the prior art as exemplified by the '714 patent. The removability of the sheet cleaning rollers of the prior art '714 patent is described in that patent as follows:

> The lower two sheet-contacting cleaning rollers 54 and 58 are mounted on roller shafts 72 and 76. *These shafts are secured in stationary positions in the opposed structure plates 80 and 82 comprising the frame of the apparatus, while permitting the rollers 54 and 58 to freely roll about the respective shaft axis.*
>
> The two upper sheet-contacting cleaning rollers 52 and 56 are mounted for rotation on roller shafts 70 and 74. *In contrast to the fixing of the lower shafts 72 and 76,* the shafts 70 and 74 have freedom of movement to slide along the vertical extent of slots 84 and 86 defined in plate 80, and in corresponding slots formed in opposing structure plate 82 (not shown). Thus, bushings 90 and 92 are fitted to the ends of shafts 70 and 74 to hold the shafts within the lateral extent of the slots formed in the structure plate 80; similar bushing secured the opposite ends of the shafts within the lateral extent of the slots in plate 82. *It will thus be appreciated that the sheet-contacting cleaning rollers 52 and 56 may be removed from the apparatus by lifting the rollers upwardly and out of engagement with the slots, once roll 64 has been removed.*

*Id.* at col. 3, ll. 37–58 (empheses added). The '714 patent, therefore, describes the method used to remove and replace rollers in the prior art device. The prior art was distinguished by comparing the readiness of removal and replacement in the improved device to the "considerable time" in the prior art. Under these circumstances, extrinsic evidence must be considered to determine the amount of time required for removal and replacement in the prior art and for removal and replacement in accordance with the claimed invention. Based on such evidence, the district court can construe the claim term "ready removal and replacement," considering that the relative sizes of the prior art and patented machines (as well as other factors) may bear on the readiness of removal and replacement. In other words, an appropriate claim construction might define ready removal and replacement as $\times$ minutes for a small machine and $x+y$ minutes for a large machine, if size affected the time required for removal and replacement.

Systems Division also presents arguments with respect to a number of purported claim limitations that are not expressly recited in the claims, and that, therefore, do not constitute claim limitations. These additional limitations include the use of the claimed device as part of an assembly line, the ability to separate the rubber rollers in the cartridge of the claimed device from each other, and the use of the claimed device for cleaning circuit boards.

 With respect to the "assembly line" usage of the claimed sheet cleaning apparatus, the district court appears to have incorrectly interpreted this aspect of the disclosure as a claim limitation. Specifically, in its order granting summary judgment, the court referred to "a clean machine to be used in an assembly line environment." *Order Granting Summary Judgment* at 6.[3] No such limitation, how-

---

**3.** We note that Systems Division argues on appeal that the district court's citation to a

ever, is recited in the claims. Because this aspect of the invention, though disclosed in the specification, was not recited in the claims, it cannot be read into the claim. *Cybor Corp. v. FAS Techs. Inc.*, 138 F.3d 1448, 1471, 46 USPQ2d 1169, 1187 (Fed.Cir.1998). Similarly, Systems Division refers to a purported "circuit board" cleaning limitation. The term "circuit board" was not recited in the claims of the patents-in-suit. This purported limitation, therefore, also cannot be imported into the express language of the claims.

Finally, Systems Division refers to a claim limitation requiring that the rubber rollers in a cartridge be "separable" from each other. (Appellant's Br. at 32.) This interpretation, however, is based on a misinterpretation of claim 16 of the '392 patent. Claim 16 requires that "with the sheet cleaning roller cartridge assembly in said service position, lifting *the at least one sheet cleaning roller out from the slide assembly* in a direction transverse to the slide axis." (Emphasis added). The recited "at least one sheet cleaning roller" of claim 16 refers to the recited "removable sheet cleaning roller cartridge assembly including at least one sheet cleaning roller" of claim 14. By removing a cartridge *assembly* with four rubber rollers from a cleaning apparatus, one removes "at least one sheet cleaning roller."

As discussed below, there also remain unresolved issues of claim construction with respect to independent and dependent

claims that were not addressed by the district court, which addressed only claims 1 and 5 of the '358 patent. We decline the parties' invitation to construe on this appeal the multitude of dependent claims remaining in this suit. It is necessary that these issues be considered by the district court on remand.

## II. Factual Inquiries

Once the claims are properly construed:

The second step in an obviousness inquiry is to determine whether the claimed invention would have been obvious as a legal matter, based on underlying factual inquiries including: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) secondary considerations of nonobviousness.

*Smith Indus.*, 183 F.3d at 1354, 51 USPQ2d at 1419–20. Summary judgment is proper only if no issues of material fact exist as to any of these underlying factual inquiries.

### A. The Prior Art

In its grant of summary judgment for obviousness, the district court relied primarily on the prior art represented by the defendant's own 1830 machine. The court described the 1830 as follows:

The XCM 1830 is a large clean machine that uses rubber cleaning rollers to re-

---

prior art reference discussing a clean machine called the LCM was error because "the publication [in April of 1996 of an advertisement for the LCM] could not constitute a one-year publication bar." (Appellant's Br. at 13.) The district court's citation to that reference, however, was merely with regard to the erroneous assembly line limitation. *Order Granting Summary Judgment* at 6 (describing the LCM as having been used in an assembly line). If the LCM device continues to be

relied upon as prior art upon remand for any other purpose, we note that because the reference had a publication date earlier than the effective filing dates of the patents-in-suit, the reference was properly cited as prior art under 35 U.S.C. § 102(a). The burden shifted to appellant to prove an earlier date of invention. *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co.*, 266 F.3d 1358, 1361, 60 USPQ2d 1361, 1363 (Fed.Cir.2001).

move particles from the sheet product, and adhesive rollers to remove the particles from the cleaning rollers.... The XCM 1830 also incorporates a "cleaning roller cartridge assembly" as construed in the claims construction section, a unit structure holding at least one sheet cleaning roller which allows for ready insertion into a sheet cleaning apparatus. This prior art roller cartridge assembly slides along rails built into the cleaning apparatus frame, and is removable from the side of the machine.... In addition, the XCM 1830 uses telescoping slide rails and a support member to slide the adhesive rollers out the side of the machine.

*Order Denying Preliminary injunction* at 19. As discussed above, the court construed the "mounting apparatus" of the claimed invention as a means-plus-function element corresponding to the disclosed slide assembly including a carriage member and two sets of opposed slide rails. The court found that the mounting apparatus of the 1830 was not the same as or equivalent to the corresponding structure in the '358 patent, but that the claimed invention would have been obvious to a person having ordinary skill in the art.

On appeal, Systems Division argues with respect to claims 1 and 5 of the '358 patent only (1) that the district court's conclusion of obviousness as to the "mounting apparatus" feature was in error, and (2) that the cited prior art also did not include the recited ready release and replacement feature. (Appellant's Br. at 11–12.) Systems Division does not contest the presence in the cited prior art of the remaining elements of claims 1 and 5. Teknek admits that the 1830 did not include the structure corresponding to the recited "mounting apparatus," but argues that the district court correctly found that this feature would have been obvious to a person having ordinary skill in the art, even though

the cleaning rollers, unlike the adhesive rollers, require coupling to a motor. (Appellee's Br. at 24–25.) Teknek further argued that the ready release and replacement feature was found in the 1830. *Id.* at 22.

██ We conclude that Teknek has not established the absence of material fact issues. As to the "mounting apparatus" question, an issue of material fact remains as to whether one skilled in the art would have used the mounting device from the adhesive rollers for the cleaning rollers, including whether a person having ordinary skill in the art would have been motivated to make the proposed modification. *See Gambro Lundia AB v. Baxter Healthcare Corp.,* 110 F.3d 1573, 1578–9, 42 USPQ2d 1378, 1383 (Fed.Cir.1997). In examining the machines and concluding that the skilled artisan would have been so motivated, the district court here impermissibly resolved fact issues on summary judgment. These issues are for a jury to decide. With respect to the "ready removal and replacement" limitation, the district court must first construe the claim language, and then determine whether there are remaining issues of material fact. If there are, these fact issues must be submitted to the jury.

While the district court in this case devoted considerable effort in an attempt to untangle a complex case, the district court on summary judgment should not simply surround itself with the prior art and make factual determinations based thereon as to the substitutability of elements as though the district court were skilled in the art. That is a function for the jury after trial upon hearing appropriate testimony from those skilled in the particular art.

### B. Secondary Considerations

At the preliminary injunction stage the district court stated that "[t]he Court finds

no objective indicia of non-obviousness such as long felt need, commercial success, failure of others, or copying based upon the documents before it." *Order Denying Preliminary Injunction* at 23. In granting summary judgment, the court stated that "[it] adopts as final its ruling in its previous Order Denying Preliminary Injunction." *Order Granting Summary Judgment* at 7. Systems Division argues, however, that on summary judgment there was evidence of copying, long felt need, laudatory statements by the defendants, and commercial success. Teknek responds that there was not sufficient evidence of secondary considerations. Having already determined that summary judgment should not have been granted and that remand is necessary, we need not resolve whether Systems Division provided relevant *objective* evidence of secondary considerations in connection with the summary judgment motion. On remand, such evidence (if any) should be presented to the jury.

### III. The Remaining Patent Claims

■ As discussed above, the district court construed the limitation of only claims 1 and 5 of the '358 patent. Based on these constructions, the court proceeded to declare all of the claims of the patents-in-suit invalid. Under 35 U.S.C. § 282, "[e]ach claim of a patent (whether in independent, dependent, or multiple dependent form) *shall be presumed valid independently of the validity of other claims;* dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim." 35 U.S.C. § 282 (2000) (emphasis added). At the outset Teknek urges that the district court was not required to address these claims because they were not separately argued by the plaintiff, relying on

our decisions in *MEHL/Biophile International Corp. v. Milgraum,* 192 F.3d 1362, 1367, 52 USPQ2d 1303, 1307 (Fed.Cir. 1999), and *Gardner v. TEC Systems Inc.,* 725 F.2d 1338, 1350, 220 USPQ 777, 786 (Fed.Cir.1984) (en banc). We disagree. Both *MEHL/Biophile* and *Gardner* refer to the appellate responsibility of this court following a finding of invalidity by a district court. *MEHL/Biophile,* 192 F.3d at 1367, 52 USPQ2d at 1307; *Gardner,* 725 F.2d at 1350, 220 USPQ at 786. Those decisions stand for the unremarkable proposition that "[w]e have no duty, with respect to claim construction *or any other non-jurisdictional legal issue,* to address questions the parties have not preserved for appeal and have not presented as grounds for challenging or supporting the judgment of the trial court." *Seal–Flex,* 172 F.3d at 842, 50 USPQ2d at 1228. At the trial court level the burden of proving the invalidity of the claims was on Teknek. *Abbott Lab. v. Geneva Pharms., Inc.,* 182 F.3d 1315, 1318, 51 USPQ2d 1307, 1309 (Fed.Cir.1999). Teknek requested the district court to grant summary judgment of invalidity of all of the claims, and was required to establish the invalidity of each claim separately. To be sure, it is permissible to group claims together for disposition where resolution involves the same issues of validity; however, the justification for such grouping is possible only where those issues are substantially materially identical. Where claims differ in scope in an aspect material to the analysis, those claims must be addressed individually.

The district court, therefore, committed error by disposing of sixty-eight claims all possessing a presumption of validity based on the analysis of one independent claim and one dependent claim without determining whether material differences exist-

ed in the remaining claims.[4]

### IV. Remand Proceeding

In summary, while the ultimate issue of obviousness is a legal issue for the court, the subsidiary factual questions must be submitted to the jury where there are genuine issues of material fact. We have concluded that such genuine issues exist here. On remand, the district court may wish to present these fact issues to the jury in the form of special interrogatories.

Further, we urge the parties, on remand, to narrow the issues particularly with respect to the dependant claims that must be considered. As we discussed in *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 64 USPQ2d 1676 (Fed.Cir.2002), it is incumbent upon the attorneys in a patent action to aid rather than confuse the district court. *Id.* at 1377, 304 F.3d 1373, 64 USPQ2d at 1678. As in that case:

> We note ... that the parties in this case have made prolix, confusing, and contentious arguments, which no doubt made it particularly difficult for the district court to address the issues with clarity and precision. We trust that, on remand, counsel will provide the necessary assistance to the district court by appropriately narrowing the issues and coherently explaining their respective positions.

*Id.*

### CONCLUSION

For the foregoing reasons, the judgment of invalidity of all of the claims of the patents-in-suit is vacated and the case is remanded for further proceedings consistent with this opinion.

*VACATED AND REMANDED*

---

4. For example, claim 27 of the '392 patent requires that "said coupler apparatus and said slide assembly are adapted to permit ... said sheet cleaning rollers [sic] removed from the slide assembly without the use of tools."

### COSTS

No costs.